## THE STATE *v.* REUBEN DEAL.

A prominent feature in that *Felonious intent* which distinguishes Robbery or Stealing from Forcible Trespass, is, *an intent to evade the law*, as, *ex. gr.* by *concealing* from the owner of the thing taken, *the person who took it*, i. e., the person who *might be sued*, or, *might be indicted*; such, are the familiar instances of taking goods &c., by persons *in masks*, or, *with faces blacked*, or, *on the highway*.

*Artifice in getting possession of the thing*, is to be distinguished from *artifice in concealing the fact that the taker has it in possession* : It is the latter that shows a *felonious intent.*

Cases in which persons *concealed* "shawls" &c., which they had previously *found*, are excepted from the general rule, because of the *temptation* to which they were subjected by *circumstances rarely occurring.*

Where the maker of a note who had complained of the manner in which he had been treated in the transaction in which he had given it, went to the holder, and after proposing to pay it in a certain way which was refused, asked to see it, upon one pretext or another, and upon having it delivered to him by the holder, kept possession of it, saying "you wont get it again ;" and upon a struggle ensuing, snatched up an axe, retreated to his horse, and then rode off, adding "Tom (the holder's son, and a surety to the note) sent me word to get this note as I could:" *Held*, to be no case of either Robbery or Larceny.

(*State* v. *Sowls*, Phil. 151, cited and approved; Roper's Case, 3 Dev. 473, cited commented upon, and approved.)

*Per* RODMAN, J., (Dissenting.) In the case of the maker of the note above stated, there is no error in the instructions to a jury : that *if they should find* that the defendant went to the holder with a felonious purpose, to get possession of it, and resorted to a fraudulent trick, to effect that purpose, he is guilty of *larceny.*

An *open manner* of taking, although *evidence* of Forcible Trespass only, is yet not *proof* of it, but may consist with larceny ; the distinction is, that in the latter case, there must be, *an asportation, and an intent to deprive the owner of his property with a view to some advantage to the taker.*

LARCENY, tried before *Jones, J.*, at Spring Term 1869 of EDGECOMBE Court.

The indictment contained also a count for Robbery.

The facts were that Deal had given a note (with sureties) to one Anderson, for the price of land sold by Anderson in 1867, as administrator of his son. A deed had been made to him, but, some year after, he complained of some defect in it, whereupon Anderson procured another deed to be made. Afterwards Deal complained again, that the second deed did not secure him against the right of its maker's wife to dower. Subsequently, he went to Anderson's place and proposed to sell him cotton in payment of his note ; this was declined ; Deal then asked to see the note, and being told that it was at the house, insisted on seeing it ; Anderson asked, *Why?* and Deal said, *to see what sort of currency it is payable in ;* Anderson replied, that made no difference, as *he* would be obliged, when Deal was ready to pay, to take the currency it called for ; Deal still insisted, and they went to the house, Deal sitting down outside of it. Anderson brought the note out and showed it to Deal, who took it, saying : " Now I have got it, and you won't get it again." Anderson told him to give it back, and seized his hand ; Deal broke loose and jumped at an axe, and catching it up, kept possession of it until he reached his horse, saying that Anderson's son Tom, who was one of the sureties to the note, had sent him word to get the bond as he could or might- He then rode away, carrying the bond, and saying that if Anderson would make him a title, he would pay for the land.

The defendant was acquitted of Robbery, under the instructions of the court.

In regard to the count for larceny, the court instructed the jury, that if they should find that the defendant went to Anderson's house with a felonious purpose to get possession of the note, and resorted to a fraudulent trick or device to effect that purpose,—he was guilty of larceny.

Verdict, guilty of the larceny &c.; Rule &c., Judgment, and Appeal.

*Howard* for the appellant.

This is a case of *Forcible Trespass* only, according to *State* v. *Sowls*, Phil. 151.

As the law of evidence, and the remedy stand at present, a man cannot steal *his own note*.

He also relied upon *Regina* v. *Holloway*, 61 E. C. L. 943.

*Attorney General, contra.*

Getting possession by a trick, accompanied by a fraudulent purpose of depriving the owner of his entire interest, is *larceny*. Arch. Cr. Pr. 182 and cases (cited by Roscoe, Cr. Ev. pp. 573, 577), *Rex* v. *Rodway* and *Rex* v. *Small*.

There was here no fair *color* of claim to the note, by the defendant: See Arch. 178, Roscoe 590.

PEARSON, C. J. The distinction between a mere trespass and a forcible trespass on the one side, and simple larceny and robbery on the other, when the two, like light and shade run into each other, is hard to draw, and it requires clear discrimination to mark the dividing line. I attempted, with the aid of Mr. Justice Foster, whose prominence as a criminal lawyer all admit, to mark the line in *State* v. *Sowls*, Phil. 151. It seems I was not fortunate enough to make my meaning clear, and I will "run and mark the line over again."

STATE *v.* DEAL.

If one takes the property of another, it is a mere trespass, for which an action lies: if *manu forti*, the owner being present, it is a forcible trespass, for which an action lies, and also an indictment. If the taking be with a felonious intent, the act is larceny, either stealing, or robbery. So it turns upon the felonious intent; and the question is, what is meant by a felonious intent.

A prominent feature of it is, that the act be done in a way showing an intention to "evade the law," that is, not to let the owner know who took his property, and, against whom to bring his action; or who is to be indicted. If one takes property slyly,—by stealth—he steals: if he takes the property forcibly, under a mask, or with his face blacked as a disguise, or when he supposes the owner cannot identify him, as on the high-way, he commits robbery. So the prominent feature of a felonious intent is "an attempt to evade justice." Such is the doctrine laid down by Foster as the common law, and such I know was the opinion of Chief Justice Henderson; whose power of reflection exceeded that of any man who ever had a seat on this bench, unless Judge Haywood be considered his equal in this respect. Judge Henderson used to ask: "What is the difference between trespass and larceny? Reply: "A felonious intent." "What is meant by a felonious intent?" Reply: "An intent to conceal from the owner, who took his property, so that he may not know against whom to bring his action, or, whom to indict." If a man takes my property openly and above board, I know whom to sue, and, if force is used, I can also have him indicted. So, such acts are not apt to occur, and the public needs no special protection against them: Beccaria on Crimes. But where there is an attempt to do the thing slyly, or do it by force under circumstances of disguise, the community needs protection, and these acts are treated as being done with a felonious intent, and are punished accordingly: *Id.*

Again, when the act is done under color of right, or some seeming excuse for it, provided there be no fraudulent con-

cealment of the person doing the act, there is no felonious intent, and the act is not larceny: *Regina* v. *Holloway*, 61 E. C. L. 941.

In our case there was no attempt to conceal; the party knew who had his note, and against whom to bring his action: so there was no effort to "evade the law," and there was some color of right, or seeming excuse for the act. The defendant alleged that the title to the land for which he had executed the note, was not good, for that it was subject to a dower right, and, being dissatisfied with this state of things, he resorted to a trick to get hold of the note, for the purpose of cancelling it. This is the "head and front of his offending:" his conduct was reprehensible, but it does not make him guilty of *stealing.*

There is no one feature of a felonious taking in the face of this transaction; no attempt to "evade the laws;" and there is a *seeming excuse* for the artifice by which he got possession of the note. The distinction is between artifice to to get possession of the note, and artifice to conceal the fact that he had gotten it in possession. This would have made the taking felonious. But no concealment was attempted in regard to his having gotten the note into his possession. It is strange to me that gentlemen af legal science cannot see the distinction between artifice to get hold of the note, and artifice to conceal the fact of his having gotten it into possession. On this distinction, new, it is true, in our cases, rests the question of taking with a felonious intent.

This case has no feature of larceny. It is the trick of an ill-advised man, who, thinking he had been imposed on in a trade, thought, if he could get hold of the note and cancel it, he would be thereby relieved from all further obligation. The law does not visit rare instances of this kind, with the infamy of the crime of larceny. Indeed, if this act has any feature of larceny, it would fall under the head of *robbery*, and not of stealing; so the man was convicted upon the wrong count. This shows that the distinction between

STATE v. DEAL.

trespass and larceny was not understood either by the Judge or the jury. [If one finds a shawl that has been lost, and. tempted by the opportunity; conceals the fact, and appropriates to his own use, it is not stealing, the books say, because there was no wrongful taking: See Roper's Case, 3 Dev. 473; but the reason of the law goes deeper into human nature. It is because of the temptation, to which many a man may yield who would not steal. "Lead us not into temptation," is a prayer enjoined by One who knew the frailty of human nature. The defendant was held not guilty of stealing, because of the temptation, to which many a man may yield, who would not steal, and because such occasions are rare, and society needs no special protection against them. A man finds the pocket-book of a stranger; after several years, the owner not appearing, the man uses the money; the owner then appears; the man denies all about it; the facts are proved: The man is not guilty of stealing; the books say, because the taking was not wrongful; but the philosophy of the law is, because such cases rarely occur, and the man was "led into temptation."]

[In Rex v. Webb and Moyle, 1 W. C. C. 4 31, it is held that "it is not larceny for miners to bring ore to the surface, and, when paid by the owner according to the quantity produced, to remove from the heaps of other miners ore produced by them, and add it to their own, in order to increase their wages, the ore still remaining in the possession of the owners." This case was put upon ground that the owners are not deprived of their property, and as between the miners, the fraud is one not of frequent occurrence, and which may be easily guarded against; so the public needs no special protection against the offence.]

We are satisfied the facts do not make out a case of stealing, or of robbery. There is error. This will certified.

RODMAN, J. (dissentiente.) The following exceptions are taken to the conviction of the defendant:

1. The taking was open, and not sly or clandestine, and he did not attempt to flee justice; therefore the taking was a trespass only, and not larceny. The Judge told the jury that "if the defendant went to the prosecutor's house with a felonious purpose to get possession of the note, and resorted to a fraudulent trick or device to effect that purpose, he would be guilty of larceny." So the question of felonious intent was left to the jury upon the evidence, and found by them. If therefore an open manner of taking be only a circumstance tending, as matter of evidence, to negative a felonious intent, and subject to be out-weighed by other circumstances in evidence, it seems to me there can be no exception to the instructions on this point. If however, an open taking is in law conclusive of the non-existence of the felonious intent, and a sly and clandestine manner of taking be always a necessary ingredient in the offence of larceny, the instructions were erroneous. But I cannot think that this last proposition can be sustained. Lord Hale says: "If A takes away the goods of B openly, before him or other persons (otherwise than by apparent robbery) this carries with it *an evidence* of only a trespass, because done openly in the presence of the owner, or other persons that are known to the owner." The instances he gives, are of persons taking things under circumstances from which the permission of the owner might be not unreasonably, supposed, and after using them a while, returning them; and he adds : "But in cases of larceny the variety of circumstances is so great, and the complications thereof so mingled, that it is impossible to prescribe all the circumstances evidencing a felonious intent, or the contrary, but the same must be left to the due and attentive consideration of the Judge and jury; wherein the best rule is, *in dubiis,* rather to incline to acquittal than conviction." From which, it seems to me that Lord Hale did not think an open manner of taking, inconsistent with larceny, but only a circumstance from which the jury might infer the absence of a felonious intent. The following is the defi-

nition of a felonious taking by the English Cr. Law Com., cited in Roscoe Cr. Ev. 5 69: "The taking and carrying away are felonious, when the goods are taken against the will of the owner, either in his absence or in a clandestine manner, or where the possession is obtained either by force or surprise, or by any trick, device, or fraudulent expedient, the owner not voluntarily parting with his entire interest in the goods; and when the taker intends, in any such case, fraudulently to deprive the owner of the entire interest in property against his will."

*Vaughn's* case, 10 Grattan, 758, resembles this as closely as a case can, and is a positive authority against the prisoner. A number of cases too numerous to be particularly cited, may be found referred to in Roscoe, Cr. Ev., 572–580, in which the taking was as open as in this case, but the parties were held guilty of larceny; See especially *R.* v. *Aikles*, 2 East, P. C., 675; *R.* v. *Wilkins*, 2 E., 673; *R.* v. *Williams*, 6 C. & P.; 390, (25 E. C. L.)

It may be asked, if an open manner of taking be consistent with larceny, wherein does larceny differ from a forcible trespass. The answer is;—in larceny there must be an asportation, and an intent to deprive the owner of his property, with a view to some advantage to the taker; whereas an indictable trespass may consist in a forcible injury to the goods without taking them away, and from some other motive than, advantage to the trespasser.

2. The taking was under a claim of right. It is of course admitted that if the taking was under a *bona fide* claim of right, it would not be felonious, and consequently, not larceny: Roscoe Cr. Ev., 592. But if the claim were a mere pretence, not really believed in, it would have no such effect: Roscoe, *ub. sup.* It will be sufficient to say of this point that it does not appear to have been taken on the trial, or that any special instruction upon it was requested. It has been repeatedly held that it is not error in a Judge to omit to give particular instructions, unless prayed for: *State* v. *O'Neal*,

7 Ire., 251; *Arey* v. *Simpson*, 12 Ire., 34. I do not see any positive error in the instruction given.

3. Inasmuch as the prisoner was one of the obligors in the note, he could not be guilty of larceny in taking it.

I do not see any weight in this, but it is fully answered in *Vaughn's* case, above cited.

4. That the taking was by force, and was therefore robbery, not larceny.

But the jury have negatived the force; and if they had not, it seems to me that it would not lie in the prisoner's mouth to say, he took by force, and being guilty of robbery, could not be convicted of larceny, any more than, if indicted for petit larceny, in stealing under the value of 12 d., he could say the goods were of greater value, and thus escape conviction of the inferior offence: Hale, P. C., 530. On an indictment for grand larceny, the prisoner may be convicted of petit larceny: *Ibid*; and, on an indictment for robbery, of larceny, since every robbery includes a larceny : *Harman's* case, Hale, P. C., 534.

For these reasons I think the judgment should be affirmed.

PER CURIAM.                    Judgment reversed.