STATE v. ROBERT POWELL.

*Larceny, Not Necessary that the Taking be Secretly.Done—Property laid in Bailee—Indictment.*

1. While *secrecy* is the usual evidence of a felonious intent when one takes the goods of another, it is by no means the only evidence of such intent.

2. Prosecutor dropped some money and the prisoner caught it up. Prosecutor asked for the money, whereupon prisoner said: "Oh, hell! You ain't going to get this money." Prosecutor started toward prisoner and prisoner put his hand to his breast and threatened to kill prosecutor if he followed him: *Held*, that it was proper to instruct the jury, that it was for them to say whether the taking of the money was with a felonious intent or not.

3. The ownership of property stolen can be charged in an indictment for larceny as being in a bailee.

4. A bill of indictment charging A with larceny, and containing a count against B for aiding, &c., will be sustained, it not being shown how A was prejudiced thereby.

INDICTMENT for larceny, tried before *MacRae, J.*, at January Term, 1889, of NORTHAMPTON Superior Court.

The indictment charged the defendant, Robert Powell, and one William Bailey, with the larceny of twenty dollars, the property of John Whitaker, and contained a second count charging said William Bailey with aiding, &c., said Powell in stealing, &c., the same twenty dollars.

Powell pleaded not guilty, and was put on his trial. Bailey was not tried.

John Whitaker, a witness for the State, being the person whose money was alleged to have been stolen, testified in substance as follows: On a certain day he went to Weldon for some bagging, and carried with him about forty dollars, the property of Mrs. Coker, to get it changed for her. William Bailey saw him with the money and watched him pretty

closely until he got through trading. Witness and Bailey left Weldon together, and crossed the bridge. While crossing the bridge witness saw the defendant Powell about thirty yards ahead. After crossing the river, witness proceeded to count his money, of which he had some silver, and twenty dollars in ".greenbacks." He commenced to put the silver in a sack, and in doing this dropped the twenty dollars in " greenbacks," which consisted of four five-dollar bills. The defendant, Robert Powell, caught it up—the four five-dollar bills that had been dropped. " I asked him for it like a gentleman, and he said : ' Oh, hell! You ain't going to get this money.' I run my hand in my pocket for my knife. Bailey held me. Defendant went off with my money. I got loose from Bailey and started after defendant. He put his hand to his breast and threatened to kill me if I followed him." Witness then went back to Weldon and had the defendant arrested.

On cross-examination he said that some of the money was his and some was Mrs. Coker's, and he could not exactly tell whose money the four five-dollar bills were. He had some money and he carried some for Mrs. Coker to get it changed. Had paper money of his own when he went to Weldon; thought he had a bill as large as ten dollars. He denied the truth of the matters testified to subsequently by the defendant.

The above was the case for the State.

The defendant testified, in substance, that he had won the money, about which Whitaker had testified, in a wager with Whitaker; that Bailey was stake-holder, and had handed him the money after he had won it.

After introducing some further testimony, tending to corroborate his statement and to impeach the testimony of Whitaker, the defendant closed his case.

The defendant's counsel asked the Court to charge :

" 1. That defendant is not guilty according to the evidence·

" 2. That if the witness John Whitaker was the servant or agent of Mrs. Coker, and the money taken was the property of Mrs. Coker, it should have been so charged in the bill of indictment."

These instructions were refused, and defendant excepted.

His Honor charged the jury :

" 1. The first question is as to the property. Was the money the property of Whitaker as charged in the indictment? If the money was intrusted by Mrs. Coker to Whitaker, to carry to Weldon and have changed for her, and he did take it to Weldon and have it changed, and was carrying it back to her, he had a special property in the money while it was in his possession, and it was properly charged in the bill as Whitaker's property.

" 2. Did the defendant steal it? If Whitaker dropped the money and defendant caught it up, and when Whitaker started after him another man held him, and the defendant went off, and upon Whitaker's getting loose from the man who held him, and starting in pursuit of defendant, the defendant threatened to kill him if he followed him, it is for you. to say whether the taking of the money by the defendant was with the felonious intent to deprive the owner of his money and convert the same to his own use. Did he intend to steal it when he took it? If he did, he is guilty. If he did not, he is not guilty.

" 3. If the evidence of the defendant is the true statement of the matter, he is not guilty."

There was a verdict of guilty, and defendant was sentenced by the Court.

Defendant appealed, and assigned error as follows :

" 1. His Honor erred in refusing the instructions prayed for.

" 2. His Honor erred in the instructions given.

" 3. His Honor having instructed the jury that, 'if the evidence of the defendant is the true statement of the mat-

ter, he is not guilty,' he should have instructed that, according to the evidence of Whitaker, the offence was not larceny, but trespass.

" 4. Because of errors in the charge concerning the ownership, and the averment of the ownership of the money.

" 5. Because of a count in the bill of indictment against William Bailey as accessory.

" 6. Because of any and all other errors appearing in the record."

*The At'orney General*, for the State.

No counsel for the defendant.

SHEPHERD, J.   The defendant contends that he is not guilty, because " there was no artifice to conceal the fact that he had gotten the money in his possession ; that there was no effort to conceal the fact of the taking, and that the prosecutor knew who had his money, and against whom to bring his action."

For these positions he relies upon *State* v. *Deal*, 64 N. C., 270, and *State* v. *Sowls*, Phil., 151.   The proposition is, that there can be no felonious intent where the taking is done openly and there is no effort to conceal.

*State* v. *Deal*, *supra,* is a leading case in this State upon the subject of felonious intent in larceny, and while the conclusion reached by the Court is generally regarded as correct, much that is said in the opinion has been questioned, and the doubts which have arisen have been greatly strengthened by the forcible dissenting opinion of Mr. Justice RODMAN. It will be observed that, in addition to there being no effort to conceal in that case, there was another element which was sufficient to have entitled the defendant to a new trial: that was, as the learned Chief Justice says, " a seeming excuse for the artifice by which he (Deal) got possession of the note. * * * The defendant alleged that the title to the land for

which he had executed his note was not good, for that it was subject to a dower right; and, being dissatisfied with this state of things, he resorted to a trick to get hold of the note, for the purpose of cancelling it." The trial Judge did not submit this view to the jury, and the defendant was thus deprived of the " seeming excuse" for his conduct.

We think that this view of the case had much to do with the decision of the Court, and in this we are sustained by Whar. Crim. Law, vol. 2, sec. 1787, where the author, speaking of *State* v. *Deal,* says: " It was held that this was not larceny, larceny implying stealth, and this being a forcible taking *under color of right.*"

We shall not attempt to " run and mark" the shadowy line between trespass and larceny, but we cannot yield our assent to the inference drawn by the defendant from the language of the opinion, that there can be *no* case of larceny unless there is an effort to conceal on the part of the offender. The language quoted in the opinion from Judge HENDERSON has never passed into judicial decision, and we have been unable to find in our edition of Foster, cited in *State* v. *Sowls, supra,* anything in support of the doctrine that the taking must be done in such " a manner as to show an intent to defraud the owner, by concealing from him who took it, so that he shall not know what has become of his property and against whom to bring his action to recover it."

As far as our investigations have extended, we have found no such criterion laid down in any of the books. True, Mr. Wharton, in his Criminal Law, vol. 3, § 1876, states that where the taking is openly done, it is but a trespass, and, perhaps, similar expressions may be found in other modern works, but upon reference to the notes it will be seen that they are based upon Hale, P. C., 509, where it is said that if the taking is done openly it " carries with it an evidence only of a trespass;" but these authors fail to add the following language of Lord HALE, used in the same connection: " But in cases of larceny the variety of circumstances is so great and

the complications thereof so mingled, that it is impossible to prescribe all the circumstances evidencing a felonious intent or the contrary, but the same must be left to the due and attentive consideration of the Judge and jury; wherein the rule is, *in dubiis,* rather to incline to an acquittal than conviction." From which, it seems, says Judge RODMAN, "that Lord HALE did not think an open manner of taking inconsistent with larceny, but only a circumstance, from which the jury might infer an absence of felonious intent."

We fully concur with the Chief Justice and Judge HENDERSON, that a prominent feature of larceny is "that the act be done in a way showing an intent to evade the law, that is, not to let the owner know who took the property," etc, but we cannot agree that this is the *only* way the felonious intent may be manifested in larceny, any more than that concealment, as the Chief Justice suggests, is necessary in robbery. It is true, as Blackstone says, vol. 4, 232, that "the ordinary *discovery* of a felonious intent is where the party doth it clandestinely, or being charged with the fact, denies it. But this is by no means the only criterion of criminality; for in cases that may amount to larceny the variety of circumstances is so great, and the complications thereof so mingled, that it is impossible to recount all those which may evidence a felonious intent or *animus furandi;* wherefore they must be left to the due and attentive consideration of the Court and jury." To the same effect is that accurate and discriminating writer, Mr. Chitty, who, in his vol. 3, 927, on Criminal Law, says that "the openness and notoriety of the taking, where possession has not been obtained by force or stratagem, is a strong circumstance to rebut the inference of a felonious intention (1 Hale, 507; East, P. C., 661, 662); *but this alone will not make it the less a felony* (Kel., 82; 2 Raym., 276; 2 Vent., 94)." * * * On page 926, he says: "Where the taking exists, but without fraud, it may amount only to a trespass. This is also a point frequently depending on

circumstantial evidence, and to be left for the jury's decision."
East, P. C, vol. 2, 662, after speaking of the evidences of a
felonious intent, says: "And the circumstances of the party's
offering the full value or more at the time ought to be left
to them (the jury) to show that his intention was not fraudu-
lent, and so not felonious, for it does not necessarily follow,
as a *conclusion of law*, that if the value of the thing taken be
offered to be paid at the time, the intent is, therefore, not
felonious, though it is, I apprehend, pregnant evidence of
the negative." Greenleaf Ev., vol. 3, sec. 157, sustains the
view that the mere fact of the taking being without conceal-
ment, is evidence which should be left to the jury. He says
that it "would be pregnant evidence *to the jury* that the
taking was without a felonious intent."

In *Vaughn's Case*, 10 Grattan, 758, the defendant was held
guilty of larceny of his bond, under circumstances similar
to those in *State* v. *Deal.* MONCURE, J., dissented, on the
ground that the bond was given for land; that there was a
controversy about the boundaries, etc., and that this, in con-
nection with the open manner in which it was taken, showed
that there was no felonious intent. He expressly admits
that concealment is unnecessary. It is true, he says, "that
secrecy, though a usual, is not a necessary, attendant of
larceny, which may be, and sometimes is, committed openly."
None of the definitions of larceny require that the taking be
done secretly.

It must be done, says Foster, 124, with a wicked, fraudu-
lent intention, which is the "ancient known definition of
larceny: *Fraudulenta obtrectatio rei alienæ invito domino.*"

Lord HALE, P. C., 508, says: "As it is *cepit* and *asportavit*,
so it must be *felonice* or *animo furandi;* otherwise, it is not
felony, for it is the *mind* that makes the taking of another's
goods to be a felony or a bare trespass only; but because
the intention and mind are secret, the intention must be
judged by the circumstances of the fact."

" The felonious intent, or *animus furandi*, means an intent fraudulently to appropriate the goods. Whether the intent existed or not, is entirely a question for the jury, which, as in all other cases of intent, they must all infer from the words or acts of the defendant or the nature of the transaction." Archbold Crim. Practice and Pl., 2 vol., 6 ed., 366—4.

In his Pleading and Evidence, 3 Am. ed., 173, Archbold thus defines the felonious intent: " But larceny, as far as respects the intent with which it is committed, * * * may, perhaps, correctly be defined thus: where a man knowingly takes and carries away the goods of another, without any claim or pretence of right, with intent wholly to deprive the owner of them, and to appropriate or convert them to his own use."

These authorities, we think, conclusively establish that, while secrecy is the *usual* evidence of the felonious intent, it is by no means the only manner in which it may be proved.

In our case every ingredient of Mr. Archbold's definition is present. The defendant *knowingly* took the goods of another, and he made no *pretence* whatever of any claim or right to them.

It is shown, as clearly as any fact can be shown, that he intended to *wholly* deprive the owner of them, and to appropriate them to his *own use.* And yet it is insisted that because he showed such a reckless disregard of the consequences of his outrageous act, he could not, as a matter of law, have a fraudulent or felonious intent.

The defendant, according to the testimony of the State, "catches up" the money of the prosecutor. When it is demanded, he says to the prosecutor, " Oh, hell! You ain't going to get this money." His companion holds the prosecutor when he attempts to regain the possession. The defendant walks off with the money, and when finally the prose-

cutor releases himself and starts in pursuit, the defendant puts his hand to his breast "and threatens to kill him if he continues to follow."

We think these circumstances afford strong evidence that there existed in the mind of the defendant a fradulent and felonious intent.

Such open taking, where there is neither force nor stratagem, is very unusual, and, as we have seen, is a "pregnant" circumstance in favor of the non-existence of the felonious intent. Strong evidence, therefore, is necessary to sustain a conviction in such case. The circumstances deposed to by the prosecutor clearly pointed to the existence of a felonious intent, and we cannot but think that, if the facts of this case had been presented to the late distinguished Chief Justice, he would have unhesitatingly sustained his Honor in submitting them to the jury.

The principles we have declared dispose of exceptions 1, 2, 3 and 6. Exception 4 is without merit. The prosecutor, it appears, was the bailee of Mrs. Coker, and, therefore, had a special property in the money. See *State* v. *Allen*, decided at this term, and the authorities cited.

We are unable to see how the rights of the defendant were injuriously affected by the count against Bailey. It seems that he was not tried with this defendant, and there is nothing in the record to suggest that the defendant was in any way prejudiced.

No error.                                               Affirmed.