407 P.2d 695

**SKAGGS DRUG CENTERS, INC.,** a corporation, Plaintiff-Respondent,

v.

**CITY OF IDAHO FALLS,** a municipal corporation, Defendant-Appellant.

No. 9598.

Supreme Court of Idaho.

Nov. 8, 1965.

2

Ferebauer & Barnard, Idaho Falls, for appellant.

4

Petersen, Moss & Olsen, Idaho Falls, for respondent.

McQUADE, Chief Justice.

Plaintiff-respondent Skaggs Drug Centers, a Utah corporation qualified to do business under the laws of Idaho, operates a business in Idaho Falls. In January 1963 the basement of the building occupied by respondent was flooded due to a broken water pipe, causing damage to merchandise and other items stored therein. Defendant-appellant City of Idaho Falls, a municipal corporation, installs and maintains a water system. It is responsible for the main water pipes which run in the center of the streets and for the service lines which extend from the main lines to the curb stops, which are located at the property lines of the consumers. The break which caused Skaggs' damage occurred in a section of the service line, the repair and maintenance of which was the City's obligation. After notification of the break, the City dispatched a work crew and the pipe was promptly repaired.

The evidence indicates that the pipe, which was galvanized iron, broke due to corrosion caused by rusting. The City's expert witness, an engineer, testified that rusting is a normal process with iron pipe; the galvanized coating merely retards and delays the eventual breakthrough. He also testified that several factors determine the lifetime of the pipe and that among them were the quality and condition of the pipe and the galvanized coating at the time of installation; the nature of the soil—whether sandy, clay, or rock; and the moisture content of the soil.[1] And while such information was available to the City, whereby it could ascertain an approximation of the lifetime of its water pipes, it never developed a program to do so. Neither did it periodically dig down to the pipes to inspect them. The City's policy with respect to the maintenance, repair and replacement of the pipelines was to wait until a break or leak was reported and then

1. The lifetime of the type of line used to service Skaggs' establishment was known to vary greatly, depending upon the above enumerated factors. Some had to be replaced in ten years or less; others have lasted for 50 years or longer. The City kept no records as to when the line in question was installed but the evidence indicated it was at least 33 years prior to the break.

dispatch a crew to make the necessary repairs. The City took no steps whatsoever to *prevent* leaks caused by rusting, nor did it institute any procedures or practices to inspect or check the lines prior to an actual break.

This appeal is from a judgment entered upon a jury verdict in favor of Skaggs and from an order denying the City's motion for a directed verdict.

■ A municipal corporation, acting in a proprietary capacity, such as when it owns, maintains and operates a water system for the benefit of its inhabitants, is subject to liability for damages arising out of its negligence under the same rules as

are applied to private individuals or corporations. Gilbert v. Village of Bancroft, 80 Idaho 186, 327 P.2d 378 (1958); Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950).

■ The case was submitted to the jury on the theory of negligence with the usual charge pertaining thereto.[2] In addition, the doctrine of res ipsa loquitur was presented to the jury;[3] the City asserts this as error and contends the application of the doctrine in this case was neither reasonable nor justified. The City claims that this instruction, together with Instruction number Sixteen,[4] in their actual and

2. "Instruction number Eight.

"You are instructed that 'Negligence' has been variously defined, but, after all, the different definitions means substantially one and the same thing. It has been termed the want of ordinary care; that is, the want of such case as a reasonably prudent and careful man would exercise under similar circumstances. It has been termed the failure to observe, for the protection of the interests of another, that degree of care, prudence and vigilence which the circumstances justly demand, whereby such other person suffers injury. It may consist in the omission to act, as well as in acting. It implies some act of omission or commission wrongful in itself. It may be active or passive, consisting in heedlessly doing an improper thing, or needlessly refraining from doing a proper thing. It is the failure to do something which in the exercise of ordinary care ought to have been done, or the doing of something, which, in the exercise of ordinary care, ought not to have been done."

3. "Instruction number Seventeen.

"There is in the law what is called the doctrine of res ipsa loquitur (which means the thing speaks for itself). It is applicable only when the instrumentality or thing which proximately causes the accident or injury is shown to be under the exclusive control of the party charged with the negligence, and the accident or injury is such as in the ordinary course of things will not happen if the party who has such control uses the proper care. "Under the doctrine such facts of the occurrence causing the injury warrant the inference of negligence, they do not compel such inference, and they furnish circumstantial evidence of negligence where direct evidence thereof may be lacking, which must be weighed by the jury, and in the absence of any other evidence will warrant a verdict for the plaintiff. Other evidence may explain or completely refute such inference."

4. "Instruction number Sixteen.

"The operator of a utility is bound to take notice that pipes in its water system were liable to deteriorate from time and

practical effect, makes the water supplier an insurer against damage arising out of operation of the water system. We disagree. The City is not an insurer for injury to others arising out of the installation, maintenance or operation of its water system; its liability depends solely upon negligence. C. C. Anderson Stores Co. v. Boise Water Corporation, 84 Idaho 355, 372 P.2d 752 (1962); Yearsley v. City of Pocatello, 69 Idaho 500, 210 P.2d 795 (1949); Dunn v. Boise City, 48 Idaho 550, 283 P. 606 (1929). The application of the doctrine of res ipsa loquitur does not, theoretically or practicably, transform liability for negligence into insurance or absolute liability. Its only function is to replace direct evidence of negligence with a *permissive* inference of negligence. It warrants, but does not compel, a finding of negligence. It furnishes circumstantial evidence of defendant's negligence where direct evidence may be lacking. The burdens of proof of the parties remain the same— the plaintiff, with the aid of the inference, must prove his case by a preponderance of the evidence; if the plaintiff presents sufficient evidence to get to the jury, the defendant is obligated to produce evidence to explain or rebut plaintiff's prima facie case. If he fails to do so, he will in most instances suffer a verdict against him. In all cases, however, the preponderance of

use, and must take such measures as ordinary care would dictate to guard against

the plaintiff's evidence is a question for the trier of facts. C. C. Anderson Stores Co. v. Boise Water Corporation, supra; Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941); Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913); Annot., 11 A.L.R.2d 1179.

██ ██ The City vigorously contends that the methods of preventing leaks caused by rusting, namely, soil testing and periodically digging down to inspect the pipes, are impractical due to the high cost and shortage of manpower. This ultimate issue is clearly for the jury to determine and is a question of fact, not of law. This court will not disturb the findings of a jury if there is substantial evidence to support such a verdict, even though the evidence is conflicting. I.C. § 13–219; Dunclick, Inc. v. Utah-Idaho Concrete Pipe Co., 77 Idaho 499, 295 P.2d 700 (1956); Preston v. Schrenk, 77 Idaho 481, 295 P.2d 272 (1956); Yearsley v. City of Pocatello, supra.

██ Because the question of negligence is for the jury to determine, the City urges that this court modify the rule established in C. C. Anderson Stores Co. v. Boise Water Corporation, supra; Yearsley v. City of Pocatello, supra; and Dunn v. Boise City, supra, that the operator of a water system is bound to take notice that

leakage resulting from such deterioration, and failure to do so is negligence."

water pipes will deteriorate with time and use. The City contends that this court has held it is negligence for the water supplier to fail to take such steps as will prevent damage from leakage resulting from such deterioration. The trier of the facts, not this court, has determined that the City's actions, or lack of the same, constitute negligence. The City claims that "The evidence in this case clearly shows there is no practical way for a water supplier to obtain knowledge of the extent of depreciation in certain parts of the water system." Again, however, the question of practicality has been decided adversely to the City by the jury. The City's own expert testified that rusting is a normal process and eventually occurs in all iron water pipe. This is sufficient to charge the jury that a water supplier is on notice that a pipeline is subject to deterioration.

The City's next assignment of error is the refusal of the trial court to grant a directed verdict because of the alleged failure by plaintiff to prove its damages. The evidence relating to damages is that a few days after the flood, the manager of Skaggs' store, Mr. Jensen, personally took inventory of the stock in the basement. On a printed inventory sheet he listed by quantity and wholesale cost all of the damaged merchandise. He did not at that time identify the articles on the list. Some merchandise was completely destroyed and had no salvage value. The cost to Skaggs

of these goods totaled $2,236.38. The other merchandise was only partially damaged, primarily with respect to its packaging and labeling. The cost to plaintiff of these items was $5,356.20. Mr. Jensen testified that in order to dispose of these articles, he sold them at 50% of cost, thereby incurring a loss of $2,678.10. The manner by which this latter figure was arrived at by Mr. Jensen was testified to as follows:

"Well, from my seventeen years experience in the drug business if you want to move something fast and get something out of it you got to make it awfully attractive. Otherwise, your're going to sit on it and eventually throw it away. And this is what we did; we figured that fifty percent of our cost would be better than having it sit around and pay floor tax on it. * *. we wanted to move it fast and re-plenish our stock."

Skaggs introduced another witness, Mr. Just, who testified that he was the owner of four stores which had for sale many of the same items sold by Skaggs. He had been in the retailing business for 15 years, 10 of them as an owner of the stores, and had taken formal courses in advertising, retail marketing and general business practices. He had had previous experience in selling merchandise which had become water-soaked and was without cartons and he too sold the damaged merchandise at

approximately 50% of cost in order to dispose of it.

. The last item of damages was $1,160.08 for wages and expenses in cleaning up the basement, pumping out the water and cleaning merchandise. The City does not question this item on appeal.

The jury awarded Skaggs $3,188.46 and a judgment was entered thereon.

The measure of damages for property or merchandise which is totally destroyed is the value of the property at the time and place of its destruction. McGuire v. Post Falls etc. Mfg. Co., 23 Idaho 608, 131 P. 654 (1913); 25 C.J.S. Damages § 83 a. When property is only partially destroyed, the measure of damages is the difference between its reasonable market value at the place of injury immediately before and immediately after such injury, or if such sum be less, the reasonable cost of repairs to restore the property to its previous condition. C. C. Anderson Stores Co. v. Boise Water Corporation, supra; 25 C.J.S. Damages § 83 b. There being little evidence on the cost of restoring the damaged merchandise to its previous condition,[5] the measure of damages, therefore, is the difference in values immediately before and immediately after the injury.

The City contends Skaggs failed to prove properly its damages because it "only proved the amount of money the goods involved cost," rather than their reasonable market value, although Skaggs' store manager testified, in effect, that cost was equivalent to reasonable market value. The City, however, did not present evidence to contradict Skaggs' valuation of the goods. In circumstances such as are presented, where the damaged articles were purchased in the normal course of Skaggs' business and were current,[6] the market value of such stock in trade prior to their destruction, in the absence of any evidence to the contrary, is the price of such goods in the usual markets where they had been purchased, plus delivery costs. The only evidence in the record regarding damages is the cost of the damaged goods and such evidence is uncontraverted. It is both reasonable and just to assume that the fair value of the merchandise is in fact the same as its cost. C. C. Anderson Stores Co. v. Boise Water Corporation, supra. See also International Harvester Co. v. Chicago, M. & St. P. Ry. Co., 186 Iowa 86, 172 N.W. 471 (1919).

---

5. There was testimony that with respect to some of the merchandise, e. g., steam irons, watches, the cost of repair would be greater than its value. Mr. Jensen also stated that it was almost impossible to obtain new cartons and labels from the manufacturers to replace those damaged by the water.

6. Mr. Jensen testified that almost every damaged item stored in the basement was less than 120 days old.

■ The City also claims that the testimony of Skaggs' witnesses, Jensen and Just, respecting the market value of the damaged merchandise after the flood was "nothing more than a speculative estimate." The market value of an article is the price for which it could be sold in its actual condition. Both witnesses were qualified to testify that the items with which they were familiar could be sold at only 50% of cost without labels and containers. They both had had numerous years of experience in the retailing field and were familiar with retailing practices. The evidence presented by them was competent and sufficient upon which to base a finding of the market value of the merchandise after the flood.

■ The last assignment of error concerns admission into evidence of the inventory list compiled by Mr. Jensen. The City admits that under I.C. § 9–1204 the list could have been and was used to refresh the memory of Mr. Jensen. It was prepared under the direct supervision of Mr. Jensen, he was present during its entire compilation, and he personally inspected every item of damaged merchandise. Although Mr. Jensen at the trial was able to recollect many of the damaged items without the aid of the inventory list, had he not been able to do so, under the said statute [7] he would have been permitted to read the list verbatim

to the jury and for the record. Anderson v. Souza, 38 Cal.2d 825, 243 P.2d 497 (1952). There is no practical difference between reading the exhibit and admitting into evidence the physical document which merely recites the same information as could be found in the record. As for the photostatic copy of the list on which Mr. Jensen later put in the brand names of the damaged goods and red X's next to those items which were completely destroyed, we again see no prejudicial error in admitting it. The additional explanatory information was inserted by Mr. Jensen a few weeks before the trial at the request of the City's attorney. No error was committed in admitting the inventory into evidence.

■ The City assigns error concerning refusal of the trial court to admit evidence relating to an inoperable sump pump located in Skaggs' basement. This evidence would not in any way inure to the City's advantage to lessen liability for negligence.

■ The City also questions the trial court's refusal to admit testimony of the expert witness, Just, on cross-examination as to his knowledge of the actual damage to the property in question. He did not, however, on direct examination testify relating to the Skaggs merchandise but only

7. "So also a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evi-

dence must be received with caution." I.C. § 9–1204.

**12**

as to his prior experience with water-damaged goods.

The judgment below is affirmed.

Costs to respondent.

McFADDEN, TAYLOR, SMITH and KNUDSON, JJ., concur.