THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PERRY OSBORN, Defendant-Appellant.

Third District   No. 82—154

Opinion filed January 19, 1983.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Patricia Hartmann, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Perry Osborn, was charged with two counts of aggravated battery and one count of felony criminal damage to property.

Following a jury trial, the defendant was convicted on all three counts. He was sentenced to concurrent terms of two years for aggravated battery and one year for criminal damage to property. The defendant asks us to reverse those convictions alleging that: (1) he was improperly convicted on the second count of aggravated battery; (2) he was denied an impartial jury because the prosecutor used peremptory challenges to exclude the only two available black jurors; (3) the prosecutor made improper comments during closing argument; (4) the State failed to prove that the defendant caused sufficient damage to be guilty of felony criminal damage to property; (5) the court erred in ordering him to make restitution of $160 and deducting that amount from his bond money, and; (6) the defendant should have been allowed to elect between sentencing alternatives since the law at the time of sentencing provided for a lesser penalty than did the law at the time the offense was committed.

This case arose out of a fight which occurred at the Dirt Trap car wash in Rock Island on February 15, 1981, between the defendant and Mark and Susan Epperson. The dispute was over who was first in line at the busy car wash that afternoon. According to Mr. Epperson, the defendant was working on his car and did not appear to be in line so Epperson pulled in front of the defendant. The defendant then approached the Eppersons' truck and told them to move. They refused. The defendant went to his car and returned with a wrench. He began striking the Eppersons' truck with the wrench and told them that he would make them move. Mr. Epperson grabbed a wrench from his toolbox and left the truck in an attempt to protect his property. As the two men grappled in the parking lot, Susan Epperson, who was nine months pregnant at the time, saw the defendant hit her husband on the head with the wrench. Intending to defend her husband, she grabbed another wrench and left the truck. As she approached the two men, the defendant kicked her in the stomach. After a bystander broke up the fight, the Eppersons drove to the hospital. The following day, Mrs. Epperson delivered a still-born, full-term baby. Medical testimony established that the blow to Mrs. Epperson's abdomen was the cause of fetal death.

According to the defendant's testimony, after he initially approached the Eppersons' truck and asked them to move, the Eppersons laughed at him and called him "boy" and "nigger." After exchanging additional insults, the defendant stated that Mr. Epperson became enraged and attacked him with a wrench. The defendant ran to his car and got his own wrench. Epperson followed and a brawl ensued. The defendant contends that he never struck either of the Ep-

persons, but that it was Susan Epperson who hit her husband on the head when she attempted to intercede. The defendant also stated that he never struck the Eppersons' truck and had no idea how or why Mrs. Epperson lost her baby.

■ The defendant's first ground for reversal is that he was improperly convicted of the second count of aggravated battery. Count two named Susan Epperson as the complainant. Therefore, before the defendant could be convicted of aggravated battery, the State had to prove that he caused her to suffer great bodily harm. (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a).) But according to the defendant, all that the State was able to prove at trial was that the defendant caused the death of a 9½-month-old fetus. Defendant argues that a 9½-month-old fetus is not a part of the mother and that causing its death does not constitute great bodily harm to the mother. Therefore, the State has failed to prove an essential element of its case.

■ The defendant attaches great importance to the fact that a 9½-month-old fetus is a separate individual in a metaphysical sense. This argument is irrelevant to the precise issue before us, which is whether a pregnant woman suffers great bodily harm when she is kicked in the stomach with sufficient force to kill her unborn child. Regardless of whether the child is an individual in a philosophical and theological sense, the fact remains that the child is physically joined to and dependant upon the mother. Therefore, a blow to the mother which does physical harm to the child necessarily involves harm to the mother as well. By alleging and proving the death of Mrs. Epperson's unborn child, the State was demonstrating both the severity of the defendant's kick and the degree of harm suffered by Mrs. Epperson. Ultimately, the issue of whether the degree of harm was severe enough to constitute aggravated battery is a question of fact for the jury to decide. (*People v. Carmack* (1977), 50 Ill. App. 3d 983.) In the present case, the facts establish beyond a reasonable doubt that the defendant caused Mrs. Epperson to suffer great bodily harm.

Mrs. Epperson testified that it was indeed the defendant who kicked her. This testimony was corroborated by an eyewitness who saw the fight. Although Mr. Epperson did not actually see the kick, he heard his wife cry out and saw her double over in pain. Finally, the fact which most convincingly demonstrates the severity of the blow dealt to Mrs. Epperson was the tragic death of her unborn child. Medical experts testified that a blow to Mrs. Epperson's abdomen caused a tear in the placenta, resulting in a hemorrhage in the umbilical cord, which cut off the blood supply to the fetus. In light of this record, we conclude that the defendant was properly convicted of aggravated battery.

The defendant next argues that the prosecutor's use of peremptory challenges to exclude blacks from the jury deprived defendant of his right to be tried by an impartial jury under the sixth amendment to the United States Constitution, and article I, section 8 of the Illinois Constitution.

The prosecutor exercised a total of six peremptory challenges, two being used to exclude the only two blacks available for jury duty. The result was an all-white jury. The defendant urges this court to follow the rule set out in *People v. Payne* (1982), 106 Ill. App. 3d 1034. There, the third division of the first district court of appeals held that when it reasonably appears to the trial court that the State is using peremptory challenges solely to exclude black jurors, the State has the burden of demonstrating that the exclusions were for reasons other than race. The defendant argues that this reasoning must be accepted by this court in order to protect the defendant's constitutional rights. We do not believe that *Payne* is a proper statement of the law in Illinois.

■ In a more recent, and in our opinion, better-reasoned case, the second division of the first district flatly rejected the reasoning in *Payne.* (*People v. Newsome* (1982), 110 Ill. App. 3d 1043.) In *Newsome,* the court stated that if *Payne* were followed, the peremptory challenge would be so effectively emasculated as to destroy its recognized function. That function was described by the United States Supreme Court in *Swain v. Alabama* (1965), 380 U.S. 202, 220, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 836:

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control."

The court in *Swain* noted that a prosecutor is presumed to be using the State's challenges to obtain a fair and impartial jury. That presumption is not overcome by allegations that *in the case at hand* all blacks were removed from the jury because they were black. Any other result would establish a rule wholly at odds with the peremptory challenge system as we know it. This same reasoning has been approved by our supreme court in decisions which both precede and follow *Swain. People v. Harris* (1959), 17 Ill. 2d 446; *People v. Dukes* (1960), 19 Ill. 2d 532; *People v. King* (1973), 54 Ill. 2d 291.

■ In the present case, the defendant cites only one instance in which the prosecutor used his peremptory challenges to exclude two black jurors. We do not believe that this record sufficiently demonstrates the type of invidious discrimination which must be proved under *Swain.* We are aware that *Swain* dealt with the equal protection clause of the fourteenth, while the instant case raises a sixth amend-

ment challenge. However, we do not think that a sixth amendment approach would change the result under *Swain.* Therefore we decline to hold that the State's exercise of its peremptory challenges in this instance violated defendant's constitutional rights.

■ The defendant also contends that he was denied a fair trial due to a number of allegedly improper comments made by the prosecutor during closing arguments. The defendant has preserved only one of the comments for appeal. The rest are waived because the defendant did not object to them at trial nor raise them in his post-trial motion. (*People v. Baynes* (1981), 88 Ill. 2d 225.) We also do not find that the comments constitute plain error so as to come within an exception to the waiver rule. (87 Ill. 2d R. 615(a).) Under the plain-error rule, when an alleged error has been waived, a reviewing court is required to consider the merits of the error only when the evidence on both sides is closely balanced. In such a case, the alleged error should be examined in order to determine if it played a role in swinging the balance in favor of the State or had no effect on the jury's decision whatsoever. In the present case, we find that the record strongly favors the State. Therefore we will consider only those alleged errors properly preserved for appeal.

■ The defendant argues that the prosecutor improperly attempted to arouse the sympathies of the jurors during the closing argument by stating that the defendant lost only a tooth as a result of the fight while the Eppersons lost much more. Any suggestion that these comments were solely intended to arouse sympathy in the jurors is nonsense. Defense counsel, in an attempt to prove that the defendant was not the aggressor, offered the testimony of an emergency room physician who had examined the defendant's cut lip and loose tooth on the day of the fight. Thus the extent of the defendant's injury was placed in evidence by defense counsel. In light of the aggravated battery charges, the extent of the Eppersons' injuries were also properly in evidence. These facts were material and relevant and it was entirely proper for the prosecutor to comment on them during closing argument.

The defendant next argues that his conviction for felony criminal damage to property was a deprivation of due process, since the State did not prove beyond a reasonable doubt that the damage to the Epperson vehicle exceeded $150. We believe the State presented adequate proof on this point.

■ For the purpose of determining the dollar value of criminal damage to property, the proper measure of damages is the cost of repair. (*People v. Carraro* (1979), 77 Ill. 2d 75.) The State need only

prove the minimum amount of damage necessary to justify a felony conviction. The record in the present case reveals the following testimony concerning the damage to the Eppersons' truck.

■ Art Rice, the owner of a body shop initially stated that the cost of repairing the truck was $205.13. It was soon discovered that Mr. Rice had apparently repaired an area of damage not caused by the defendant. In order to clarify this point, the State had Mr. Rice re-examine the truck and recalled him to the witness stand. Mr. Rice then estimated that it cost approximately $160 to repair the damage caused by the defendant. The defendant implies that the State improperly coached Mr. Rice into arriving at this estimate, but offers no proof of impropriety. In the absence of any evidence on this point, we cannot conclude that the prosecutor acted improperly when Mr. Rice re-examined the truck. Furthermore, it was entirely proper for the trial court to allow the State to recall this witness for the limited purpose of pinpointing the damage caused by the defendant. (*People v. Scott* (1973), 14 Ill. App. 3d 211.) The testimony of Mr. Rice and the Eppersons, along with pictures of the truck which were placed in evidence, were sufficient to permit the jury to conclude, beyond a reasonable doubt, that the damage to the truck was in excess of $150.

■ Notwithstanding the sufficiency of the evidence on the amount of damage, the defendant contends that the amount was improper since a cheaper method of repair could have been used. Once the State has proved the minimum amount of damage necessary to justify a felony conviction, the defendant has the burden of going forward with evidence of a different measure of damage. *People v. Carraro* (1979), 77 Ill. 2d 75.

In the present case, the defendant cross-examined Mr. Rice only as to what other methods could have been used to repair the Eppersons' truck. The defendant failed to establish how those other methods would result in lower repair costs. Nor did defense counsel present any evidence of an alternate measure of damages during his case in chief. In the absence of such evidence, we are not required to consider the propriety of any allegedly cheaper repair method.

The defendant next argues that the court erred in ordering him to make restitution of $160 to the Eppersons for the damage he did to their truck and deducting this amount from his bond money. Any objection to the propriety of ordering restitution has been waived since the defendant failed to object at the sentencing hearing when the order was imposed. (*People v. Pearson* (1982), 108 Ill. App. 3d 241.) We note in passing that the amount of restitution, $160, is not a great sum, in view of the fact that the defendant posted a $3,000 cash bond.

Finally, the defendant argues that his sentence for felony criminal damage to property should be vacated and the cause remanded for a new sentencing hearing because he was sentenced without being given the opportunity to elect between being sentenced under the law in effect at the time of the offense and the law in effect at the time of sentencing.

■■■ Section 4 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1981, ch. 1, par. 1103) states that if any penalty or punishment be mitigated by any provision of a new law, such provisions may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. At the time the defendant committed the offense of criminal damage to property, the demarcation line between misdemeanor and felony damage was $150. (Ill. Rev. Stat. 1981, ch. 38, par. 21—1(a).) But by the time the defendant was sentenced, the dividing line was raised to $300. (1981 Ill. Laws 2514, 2515.) The defendant caused only $160 worth of damage. Therefore, under the new law only a Class A misdemeanor sentence could have been imposed and the defendant should have been allowed to choose which law he wished to be sentenced under. Obviously, defendant would have chosen the lesser sentence.

■■ The State argues that no error occurred since the change in the law altered an element of the offense rather than reduce the penalty. This argument cannot survive analysis.

Under the old law, the defendant's conduct was classified as a Class 4 felony with a maximum prison term of three years. Under the new law, identical conduct is classified as a Class A misdemeanor with a maximum jail term of less than one year. Clearly, this change in the law has resulted in a lesser penalty. However, contrary to the defendant's argument, we do not think it is necessary to remand this case for resentencing. Defendant has received a two-year sentence for aggravated battery, and one year for criminal damage to property. The sentences are to be served concurrently. Therefore, any lesser sentence imposed by the trial court after the case is remanded will not actually reduce the prison time which defendant must serve. Accordingly, we will enter an order reducing defendant's sentence for criminal damage to property from one year to 364 days.

Affirmed; order entered.

ALLOY and STOUDER, JJ., concur.