859 P.2d 353

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Antonio AVELAR, Defendant–Appellant.**

**No. 19500.**

Court of Appeals of Idaho.

Aug. 30, 1993.

Nevin, Kofoed & Herzfeld, Boise, for appellant. David Z. Nevin argued.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for respondent. Thomas P. Watkins argued.

WALTERS, Chief Judge.

Antonio Avelar was found guilty by a jury of delivering a controlled substance, cocaine. The issues we address on appeal are (1) whether the state presented evidence sufficient to prove the defendant's identity as the person who committed the crime charged; and (2) whether the prosecutor's failure to disclose evidence favorable to the defense requires that the conviction be set aside. For the reasons explained below, we conclude that the evi-

dence contained in the record was sufficient to defeat the defendant's motion for acquittal. However, we hold that the prosecution's suppression of information favorable to the defendant violated his right to due process. Therefore, we vacate the judgment of conviction and remand the case to the district court for a new trial.

### Facts and Procedural Background

This case arose out of an investigation of David Homolka, a man whom police suspected of drug trafficking in the Twin Falls area. When a series of controlled drug buys between an informant and Homolka confirmed their suspicions, police sought to determine Homolka's drug source. Through the informant, police learned that Homolka reportedly obtained his drugs from a dairy farmer named "Tony" who was believed to live in the area of Buhl, Idaho, near Twin Falls. Police focused their attention on the defendant when the pen register placed on Homolka's telephone line revealed he had been making calls to a number associated with the defendant, Antonio "Tony" Avelar, a dairy farmer in Buhl. Police planned to arrest Homolka and his source by setting up a purchase through the informant. This purchase was to take place on September 26, 1989, at the parking lot of the K–Mart in Twin Falls. As he arranged the transaction with an undercover officer, Homolka said he would be contacting his source to obtain the quantity of cocaine sought for the deal—four ounces.

When telephoned by the undercover officer on the morning of the 26th, Homolka confirmed the deal and said his source was on the way with the cocaine, and that he, Homolka, would meet the informant at the parking lot later that morning. In the meantime, a surveillance officer saw a man leave Avelar's residence in a pickup truck and drive toward Twin Falls. Another officer picked up the surveillance of the truck and followed it to Homolka's house, where the truck entered Homolka's driveway and stopped in front of the house. A third surveillance officer, watching Homolka through binoculars and recording the event

through a video camera, observed Homolka walk up to the truck. Without exiting the vehicle, the driver handed Homolka a small package through the open window and then drove away. Homolka carried the package into the open garage and placed it on a shelf. The same officer observed Homolka, hours later, retrieve a package from his garage and drive away. Homolka was arrested later that morning after displaying the cocaine to the informant in the K–Mart parking lot.

Based upon this evidence, the state charged and tried the defendant with the crime of delivering cocaine. A review of the trial transcript reveals that the state's theory was that a man had delivered cocaine to Homolka, and that person was the defendant, Antonio Avelar. To support its case, the state presented testimony from seven investigating officers, from the informant, and from Homolka. The defense did not dispute that Homolka had made calls to the defendant, or resist the state's claim that the defendant had driven from his house to Homolka's on the morning of the 26th. Instead, the defense attempted to exploit other weaknesses in the state's case, namely, that there was no proof the defendant was involved in drug trafficking, that he was Homolka's drug "source," or that he was the person who had supplied the cocaine Homolka presented to the police informant on the morning of September 26th. Consistent with his constitutional right, the defendant did not take the stand as a witness during the trial.

Avelar moved for a judgment of acquittal, contending that the state had failed to prove he was the person who had delivered the cocaine to Homolka. He argued that the state had failed to meet its burden of proof because none of the state's trial witnesses had identified the defendant as the person committing the acts observed. The district court denied the motion. Following its deliberations, the jury returned a verdict finding the defendant guilty as charged. The court entered a judgment of conviction, and sentenced Avelar to a term of ten years.

Counsel for Avelar continued to investigate the case. When re-interviewing Homolka, the state's chief witness, counsel discovered for the first time that Homolka had told the prosecuting attorney, prior to trial and again immediately before giving his testimony, that he could not identify the defendant as the person who had delivered the cocaine to him. It is undisputed that the prosecutor possessed this information and failed to reveal it to the defense. Citing these facts, counsel for Avelar moved for a new trial, arguing that the suppression of this evidence by the prosecution violated the defendant's right to due process and that his conviction should be vacated. The district court denied the motion, concluding that the withheld evidence, although favorable to the accused, was not material.

On appeal, Avelar maintains that the district court erroneously denied his motion to acquit, arguing that the evidence presented by the state was insufficient to prove identity. He alternatively challenges the district court's denial of his motion for a new trial. He avers that the statements from the state's key witness declaring his inability to identify the defendant were indeed material to the defense, and that their suppression by the prosecution violated his right to a fair trial.[1]

### Denial of Motion for Acquittal

■ We first turn to Avelar's contention that his motion for a judgment of acquittal should have been granted because the evidence presented was insufficient to prove he was the person who committed the acts charged. This motion was made at the close of the state's case, under Rule 29(a) of the Idaho Criminal Rules. That rule provides that such a motion shall be granted if the evidence is insufficient to sustain a conviction of the offense charged. *State v. Printz,* 115 Idaho 566, 768 P.2d 829 (Ct.App.1989). When a motion for judgment of acquittal has been denied, and the defendant stands convicted, all reason-

able inferences on appeal are taken in favor of the prosecution. *State v. O'Campo,* 103 Idaho 62, 644 P.2d 985 (Ct.App.1982). The denial of a motion to acquit will be affirmed if the record contains sufficient evidence from which a rational trier of fact could conclude that the defendant's guilt as to each material element of the offense was proved beyond a reasonable doubt. *See Printz,* 115 Idaho at 567, 768 P.2d at 830.

■ The prosecution bears the burden of proving every essential element of the crime charged. Thus, the government not only must prove that a crime has been committed, but that the party charged committed that crime. *Capwell v. State,* 686 P.2d 1148 (Wyo.1984). The identification of the accused is an issue of fact for the jury, and may be proved by direct or circumstantial evidence. *People v. Jenkins,* 768 P.2d 727 (Colo.App.1988); *White v. State,* 95 Nev. 159, 591 P.2d 266 (1979); *Murray v. State,* 671 P.2d 320 (Wyo.1983).

■ It is true that none of the state's witnesses specifically pointed to or otherwise identified the defendant seated in the courtroom as the person who committed the acts testified to: no witness expressly identified the defendant as the person associated with the telephone number registered to "Tony Avelar," as the person residing at the house under surveillance, as the person driving the pickup from the house, as the person who handed the package to Homolka from the pickup truck, or as the person who gave Homolka the cocaine. However, as explained below, we conclude that there was substantial evidence from which a reasonable trier of fact could find that these acts were committed by the defendant, Antonio Avelar, for the purpose of determining the defendant's challenge to the court's denial of his motion for acquittal.

At trial, the state established that Homolka was involved in drug trafficking and

---

1. Avelar additionally seeks to vacate his conviction on grounds of prosecutorial misconduct occurring in the state's opening and closing statements—an issue raised for the first time on appeal. He also challenges his sentence as excessive. However, because we vacate the conviction on other grounds, we do not address these issues.

that he had claimed his supplier was a dairy farmer in the Buhl area named Tony. Homolka testified that "Tony" had given him the cocaine in the instant case. Evidence produced by the pen register showed that, prior to the transaction, Homolka made several telephone calls to a number belonging to "Tony" Avelar, a dairy farmer who lived near Buhl. Without objection from the defense, the officer who had been watching "Avelar's" house testified that the person he saw leave the house and drive away in the pickup matched the photograph of "Avelar" he had been given at the outset of the surveillance operation. The state also presented testimony from the officer who had observed the transaction at Homolka's house through binoculars and recorded it on video tape. Without challenge from the defense, he testified that the driver had been identified to him as "Avelar."

In addition to this testimony, the jury was shown the video tape which depicted some sort of transaction between Homolka, who was standing in front of his house, and the driver of the pickup truck, whom the state claimed to be the defendant. Although the driver did not exit the vehicle, the tape captured a brief view of his face as he looked out the side window. The arguably poor quality of the video-taped image, and the relative brevity of the shot, are matters going to the weight of the evidence. In short, it was for the jury to determine if the image of the person captured on the tape resembled the defendant seated in the courtroom.

 Viewing all reasonable inferences in favor of the prosecution, we conclude that the evidence showing that the defendant delivered cocaine to Homolka, although far from compelling, was sufficient to support the jury's verdict. Therefore,

we affirm the district court's order denying Avelar's motion for judgment of acquittal.[2]

### Nondisclosure by the Prosecutor

 Next, we consider whether the prosecution's failure to disclose evidence entitles the defendant to a new trial. The Due Process Clause of the Fourteenth Amendment imposes upon the government the duty to disclose evidence in its possession which, if unrevealed, would deprive the defendant of a fair trial. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A prosecutor breaches this duty and violates the defendant's constitutional rights where the prosecutor suppresses evidence that is both favorable to the accused *and* material to the defendant's case. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980). Evidence "favorable to the accused" includes evidence which, if disclosed and used effectively, may make the difference between conviction and acquittal. *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380. Such evidence may include exculpatory evidence and impeachment evidence. *Id.; Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *State v. Johnson,* 120 Idaho 408, 816 P.2d 364 (Ct. App.1991).

Regarding "materiality," the courts have held:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

---

**2.** However, this conclusion does not necessarily mean that the judgment of conviction must be sustained. Generally, a defendant is entitled to a judgment of acquittal only where the evidence at trial was insufficient to support his conviction. Where the defendant is acquitted, the Double Jeopardy Clause of the federal constitution bars his reprosecution. *Burks v. United*

*States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Where a defendant seeks and obtains the reversal of his conviction on grounds *other than* the insufficiency of the evidence, double jeopardy principles do not prevent the state from retrying him. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

*Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, *quoted in State v. Higgins*, 122 Idaho 590, 598, 836 P.2d 536, 544 (1992).[3]

In *Bagley*, the United States Supreme Court recognized that the government's failure to disclose favorable evidence not only deprives the defense of that evidence, but may also have the effect of representing to the accused that the evidence does not exist. 473 U.S. at 682, 105 S.Ct. at 3383. In reliance on this type of misrepresentation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. *Id.* Thus, in ascertaining whether the probable effect of the prosecutor's nondisclosure is sufficient to undermine the confidence in the outcome of the trial:

> The reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response.

*Bagley*, 473 U.S. at 683, 105 S.Ct. at 3384. Whether the evidence withheld by the prosecutor is "material" presents a mixed question of law and fact. We defer to the trial court's findings of fact, if supported by substantial evidence. However, we freely review the application of the constitutional principles to those facts found. *See Higgins*, 122 Idaho at 598, 836 P.2d at 544; *State v. Olsen*, 103 Idaho 278, 647 P.2d 734

(1982); *State v. Johnson*, 120 Idaho 408, 816 P.2d 364 (Ct.App.1991).

The undisputed facts in the record show that counsel for the defense filed pretrial requests for discovery seeking all witnesses' statements and any exculpatory information. In reply, counsel was provided an opportunity to interview Homolka, at which time Homolka expressed some ambivalence concerning his ability to identify the defendant. However, subsequently and unbeknownst to the defense, Homolka went to the prosecutor and *unequivocally* advised him that he would *not* be able to make the identification at trial.[4] The prosecutor did not disclose these statements to the defense. Moreover, contrary to this new information, the prosecutor told the jury in his opening statements at trial that Mr. Homolka is "going to tell you how he got his supply from Tony, Tony sitting right over there (indicating)." It was only after hearing these opening remarks, and without the benefit of the information kept secret by the prosecutor, that the counsel for the defense "admitted" to the jury in his own opening statement that the person the police observed leave Avelar's residence and who drove to Homolka's residence was the defendant.[5] When Homolka again told the prosecutor privately that he definitely could not identify the defendant, the prosecutor still refrained from disclosing the statement to defense. Instead, knowing that Homolka would not identify the defendant, the prosecutor allowed Homolka to testify that a "Tony" had delivered the cocaine, conspicuously [6] avoiding any request for an in-court identification. Misled by the prosecutor concerning the true state of the evidence, the defense chose, evidently for tactical reasons, not to pursue the issue of identification with Homolka on cross-examination.

---

3. This standard for materiality is sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

4. The district court found that Homolka's statements constituted new evidence which, at the

time of trial, was known to the prosecutor but unknown to the defense.

5. The defendant *never* admitted, however, that he was the person who had delivered cocaine to Homolka.

6. The prosecutor went through the familiar litany for an in-court identification with other witnesses, but not with Homolka.

Applying the standards for materiality set forth in *Bagley,* we hold there is a reasonable probability that, had Homolka's statements been disclosed to the defense at the time they were made to the prosecutor, the defendant, Antonio Avelar, would not have been found guilty. Viewing the totality of the circumstances, we conclude it highly unlikely that the defense would have essentially conceded the issue of identity at trial had it been known that the government's star witness would not be able to identify the defendant as the person who delivered the cocaine—the very act for which the defendant was on trial. Furthermore, we note that the state's proof on this matter, although sufficient to go to the jury, was weak indeed. Homolka had initially described his "source" as having a Cuban accent; the defendant was Portuguese. Homolka also testified that he called "Tony" on the morning of the transaction, yet the pen register recorded no such call to Avelar's home on that morning. Although the state called two eye-witnesses besides Homolka, neither one testified that the person he observed was the defendant.[7]

We recognize the difficulties in determining what approach at trial the defense would have taken if not misled by the prosecutor's misrepresentations. Nonetheless, we are able to conclude that the evidence withheld by the prosecutor in this case, viewed in the light of the totality of the circumstances, raises strong doubt that the outcome of the trial would have been the same. Accordingly, we hold that the evidence was material to the defense of the accused, and that its nondisclosure by the prosecutor requires the conviction to be set aside.

### Conclusion

We affirm the district court's denial of the motion to acquit. We hold, however, that the prosecutor withheld information which was material to the defense, in violation of the defendant's right to a fair trial.

Accordingly, we vacate the judgment of conviction and remand the case to the district court for a new trial.

SWANSTROM, J., pro tem., and SILAK, J., Acting Judge, concur.

---

7. Whether these two witness *could have* made the identification if requested is not a matter disclosed by the record nor one for our speculation. However, we note that even if these witnesses could testify to identity, such evidence certainly would not negate the impact on the jury of Homolka's inability to do so.