946 P.2d 1338

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Joseph R. HUGHES, Jr., Defendant–Appellant.**

**No. 22261.**

Court of Appeals of Idaho.

Aug. 12, 1997.

Rehearing Denied Nov. 12, 1997.

or to his resignation.

Jennifer L.K. Haemmerle, Butte County Public Defender, Hailey, for defendant–appellant.

Alan G. Lance, Attorney General, Catherine O. Derden, Deputy Attorney General, Boise, for plaintiff–respondent.

Substitute Opinion

The Court's Prior Opinion Dated July 14, 1997 is Hereby Withdrawn.

LANSING, Chief Judge.

After a jury trial, Joseph R. Hughes was found guilty of felony malicious injury to property, I.C. § 18–7001 and the trial court entered an order withholding judgment and placing Hughes on probation. On appeal, Hughes asserts that the district court erred in allowing the State to impeach its own photographic evidence and in denying Hughes's motion for a judgment of acquittal at the close of the State's case because there was insufficient evidence to identify him as the perpetrator and insufficient evidence to establish that the value of the property damage exceeded $1,000. Because we conclude that the State did not present evidence to prove that property destroyed by Hughes was of a value exceeding $1,000, which valuation was necessary to render the offense a felony rather than a misdemeanor, we hold the charge on which the withheld judgment is based must be reduced to a misdemeanor.

## I. FACTS

On May 22, 1994, at about 3 a.m., Deputy Sanders of the Butte County Sheriff's Office observed a red Chevrolet pickup repeatedly backing up and ramming the garage door of Clair's Diesel, an auto repair shop in Arco, Idaho. The deputy, who was on foot some distance away from the repair shop, ran to his nearby patrol car and drove to the repair shop. He estimated that he arrived at the shop within thirty seconds after observing the red pickup damaging the door. Seeing that the pickup was gone, Sanders drove on, and in another thirty seconds spotted a red Chevrolet pickup that looked like the one he had just observed at the repair shop. Sanders did not see any other traffic on the streets at the time.

The deputy stopped the pickup and asked the driver, Hughes, to accompany him back to Clair's Diesel. Hughes complied. At the repair shop Sanders and other officers who had responded to his call for assistance examined the damaged garage door and Hughes' vehicle. They took measurements of the height of the dents and red paint on the door and the height of marks on the pickup, photographing both. They also examined a white paint-like substance on the trailer hitch mounted on the rear of Hughes' pickup. Hughes was charged with felony malicious injury to property, and was found guilty by a jury. The district court withheld judgment and placed Hughes on probation for three years.

On appeal, Hughes contends that the district court incorrectly allowed the State to impeach its own photographic evidence and that the court should have granted Hughes' motion for a judgment of acquittal due to insufficiency of the State's evidence.

## II. ANALYSIS

### A. The Testimony Regarding the Quality of the Photographic Evidence

The State introduced into evidence Polaroid photos of Hughes' pickup and the damaged garage door. On cross-examination of Deputy Sanders, counsel for Hughes attempted to discredit Deputy Sanders' testi-

mony regarding paint transfers that were not visible in these photos. On redirect examination, Sanders testified that, although the photos were accurate within the limits of a Polaroid photograph, they did not show all of the details that could be seen on first hand observation. Counsel for Hughes objected to this testimony on the ground that the State was impeaching its own evidence, but the district court overruled the objection.

■ Hughes cites no apposite authority supporting his objection to this testimony, and we know of no rule of law that precludes a party from acknowledging the limitations of its photographic evidence. The testimony given by Deputy Sanders on redirect examination merely acknowledged that the quality of the Polaroid photographs was such that they did not reproduce all of the details that could be seen from direct observation of the photographed objects. Even if this could be characterized as "impeachment" of the deputy's prior testimony that the photographs fairly and accurately depicted the condition of the pickup and garage door, it would not be objectionable, for I.R.E. 607 permits a party to impeach its own witness. We perceive no error in the admission of this evidence.

**B. Sufficiency of the Evidence**

At the close of the State's evidence, Hughes moved for a judgment of acquittal pursuant to I.C.R. 29. The district court denied the motion, and Hughes presented evidence on his own behalf. Hughes now maintains that the court's denial of the motion for a judgment of acquittal was erroneous.

■ Because Hughes elected to introduce evidence rather than to stand on his Rule 29 motion, he waived any right to limit the appellate court's review to the sufficiency of the evidence as of the close of the State's case. *State v. Watson*, 99 Idaho 694, 698, 587 P.2d 835, 839 (1978); *State v. Brooks*, 103 Idaho 892, 903, 655 P.2d 99, 110 (Ct.App. 1982). On review, therefore, the appellate court must consider all of the evidence, including that offered by the defense, to determine whether it is sufficient to sustain the conviction. *Watson, supra, citing State v.*

*Gardner*, 231 Or. 193, 372 P.2d 783, 784 (1962).

■ A jury verdict will not be disturbed on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785–86, 61 L.Ed.2d 560 (1979); *State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Ashley*, 126 Idaho 694, 695–696, 889 P.2d 723, 724–25 (Ct.App.1994). On appellate review, the facts and inferences drawn therefrom are construed in favor of upholding the verdict. *State v. Whiteley*, 124 Idaho 261, 270, 858 P.2d 800, 809 (Ct.App. 1993). A judgment must be reversed, however, if the evidence is insufficient to support the conviction. *State v. Warden*, 97 Idaho 752, 554 P.2d 684 (1976); *State v. Nastoff*, 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct. App.1993); *Whiteley, supra*.

**1. Sufficiency of the evidence on identification of Hughes**

Hughes first argues that the evidence is insufficient to identify him as the perpetrator of the offense. He points out that Deputy Sanders acknowledged at trial that he could not identify Hughes as the person who was driving the pickup when Sanders saw it ramming the garage door.

■ Hughes' argument is without merit. The identity of the perpetrator of a crime may be proved by circumstantial evidence. *State v. Avelar*, 124 Idaho 317, 320, 859 P.2d 353, 356 (Ct.App.1993). In this case, there was ample circumstantial evidence from which the jury could reasonably infer that Hughes was the offender. The incident occurred at 3 a.m., in a small town, and Deputy Sanders testified that he saw no other traffic on the streets at the time. Sanders estimated that less than one minute passed from the moment he saw the pickup backing into the repair shop door to the moment he spotted Hughes' pickup on the street. Hughes' vehicle was the same make and color that Sanders had just seen at the repair shop. In investigating the crime, officers found that a

large dent low on the garage door was the same height as the trailer hitch on Hughes' pickup. They also found red spots on the white garage door that matched the red color of Hughes' pickup and white flecks on the trailer hitch that looked like paint from the garage door. As evidence of motive, the State also showed that Hughes and the owner of the repair shop had been involved in a civil dispute which had resulted in the issuance of a small claims court judgment against Hughes. This evidence, though circumstantial, was sufficient to permit a jury to reasonably infer that the pickup that Hughes was driving when stopped by Deputy Sanders is the one that inflicted the damage on the repair shop door and that Hughes was operating the pickup at the time.

Hughes complains that the State did not obtain a laboratory analysis of the white flecks on the pickup to determine whether they matched the paint on the garage door. However, the absence of such forensic evidence is of no consequence here. Although scientific tests might have provided the most compelling evidence, the law does not require the State to conduct scientific testing in every case where it could be done.

Hughes also asserts that the photographs in evidence show that Hughes' pickup could not have caused the damage to the door because the height of some of the dents or paint scuffs on the door were inches higher than the part of Hughes' pickup which would have impacted the garage door. We find this argument unpersuasive. Hughes' attorney drew these alleged discrepancies to the jury's attention during the cross-examination of the State's witnesses. The jurors had the photographs during deliberations and were free to draw their own conclusions. As the prosecutor argued, the alleged discrepancy could be explained by the bending of the garage door from the impact, which could result in the door and the pickup coming into contact in more than one place. This was a question of fact for the jury to determine.

Finally, Hughes contends that minor inconsistencies in Deputy Sanders' description of the pickup at the preliminary hearing and his description given at trial show that "the only eye-witness failed in his identification of the truck and driver." These minor discrepancies were used to impeach Deputy Sanders, and it was the jury's province to assess their impact upon the deputy's credibility. *See State v. Huggins,* 103 Idaho 422, 648 P.2d 1135 (Ct.App.1982). Hughes has not shown that the evidence was insufficient to support the jury's finding that he was the perpetrator of the offense.

**2. Sufficiency of the evidence on the value of damage**

Hughes next contends that there was insufficient evidence of the value of the damage to the garage door to prove this offense a felony rather than a misdemeanor.

The statute under which Hughes was prosecuted, I.C. § 18–7001, specifies that the offense of malicious injury to property may be either a misdemeanor or a felony, depending upon the value of the damage. It states:

Every person who maliciously injures or destroys any real or personal property not his own, in cases otherwise than such as are specified in this code, is guilty of a misdemeanor, unless the damages caused by a violation of this section exceed one thousand dollars ($1,000) in value, in which case such person is guilty of a felony....

Hughes correctly points out that under this statute, when a felony violation is charged, the State bears the burden to prove beyond a reasonable doubt that the value of the property damage exceeded $1,000. Hughes' contention that the State did not meet this burden in his case requires that we resolve an issue of first impression in this State: What is the proper measure of the "value" of damages within the meaning of I.C. § 18–7001?

Because the Idaho statutes do not prescribe a method for quantifying the value, and we find no Idaho authority addressing this issue, we have consulted case law of other jurisdictions. When property has been damaged but not destroyed by a violation of statutes similar to I.C. § 18–7001, some states favor the reasonable cost of repair as the appropriate valuation of the damage. *People v. Dunoyair,* 660 P.2d 890, 895 (Colo. 1983); *People v. Carraro,* 67 Ill.App.3d 81, 23 Ill.Dec. 787, 792, 384 N.E.2d 581, 586 (1979),

*aff'd,* 77 Ill.2d 75, 31 Ill.Dec. 817, 394 N.E.2d 1194 (1979); *People v. Osborn,* 111 Ill.App.3d 1078, 67 Ill.Dec. 674, 678, 444 N.E.2d 1158, 1162 (1983). If the cost of repair exceeds the fair market value of the damaged object, however, the measure of damage is limited to the value of the item before the damage occurred. *Dunoyair,* 660 P.2d at 894–95; *Carraro,* 23 Ill.Dec. at 793, 384 N.E.2d at 587. Other jurisdictions allow the prosecution to prove the amount of damage by using either the cost of repair or the diminution in value caused by the damage to the property. *Young v. State,* 848 P.2d 267, 271 (Alaska.Ct.App.1993); *Willett v. State,* 826 P.2d 1142, 1145 (Alaska.Ct.App.1992); *State v. Ratliff,* 46 Wash.App. 325, 730 P.2d 716, 718 (1986).

■ We find the latter approach to be preferable. Either the diminution of the object's fair market value or the reasonable cost of repair is a fair means of measuring damage when the offender has harmed but not destroyed the property. If the State applies the diminution of value measure, then it must establish the fair market value of the property immediately before and after the damage.

■ When the cost of repair is chosen, this measure may not exceed the market value of the item before the damage, for "an offender cannot cause an economic loss that surpasses the actual value of the property damaged." *Dunoyair,* 660 P.2d at 894–95. The defendant may challenge the cost of repair measure, therefore, by presenting evidence of a lesser fair market value.

■ When property has been entirely destroyed, neither the cost of repair measure nor the diminution in value measure are applicable. The proper measure of damages in such event is the fair market value of the property at the time and place of its destruction. *See Nichols v. United States,* 343 A.2d 336, 341 (D.C.1975). *Cf. Skaggs Drug Centers, Inc. v. City of Idaho Falls,* 90 Idaho 1, 10, 407 P.2d 695, 699 (1965) (in civil action, the measure of damages for property or merchandise which is totally destroyed is the value of the property at the time and place of its destruction); *Latham Motors, Inc., v.*

*Phillips,* 123 Idaho 689, 696, 851 P.2d 985, 992 (Ct.App.1992) (in civil action, measure of damages for the total loss of a car is the fair market value of the car at the time of its loss).

■ In some cases the destroyed item may have no market value or the value may not be ascertainable. Therefore, upon a showing that fair market value cannot be established, the State may show the economic value of the loss caused by the defendant through such factors as original purchase price, replacement cost, the property's general use and purpose, and salvage value. *See Dunoyair,* 660 P.2d at 895. If the State attempts to prove value through replacement cost, however, we think it incumbent upon the State to produce some evidence that the replacement item is of a quality and design comparable to that of the destroyed item. This is so because a replacement actually purchased by the crime victim may bear little or no relationship to the quality and value of the destroyed property, and the classification of the offense as a misdemeanor or a felony should not turn upon the victim's choice between a higher quality, more expensive replacement and a lower quality, more modestly priced item.

We hold, therefore, that replacement cost evidence may be used as an indicator of value only when the State has demonstrated that the fair market value of the destroyed item is not reasonably ascertainable or that the item had no market value, and when replacement cost evidence is relied upon, the State must show that the replacement (whether actually purchased by the victim or not) is a reasonably close proximation of the design and quality of the destroyed item.

■ With these standards in mind, we now turn to an examination of the evidence presented in Hughes' case regarding the value of damage to the repair shop door. The only evidence offered by the State addressing the severity and value of damage to the door was the testimony of the shop owner. He testified that the garage door was "completely beyond repair" and had to be "completely replaced." He further testified that the door had been replaced at a cost of

$2,332, which was largely covered by insurance. This cost included replacement of not only the door, but the guides, rollers, and electric opener. On cross-examination, the owner was unable to give any estimate of the value of the door before its destruction. There was testimony that the new door had windows while the old one did not. There was no other evidence that compared the design, composition or quality of the old door with that of the replacement.

 The owner's testimony that the damage was irreparable and that the door had to be replaced precludes use of repair cost or diminution in value as the measure of damage. Rather, this is a case where the property was destroyed and, hence, the fair market value of the door prior to its destruction, if ascertainable, is the proper measure of damage. The State, however, made no effort to prove the market value of the destroyed door or to show that its value was unascertainable. The State relied instead upon the price of the new door and ancillary equipment actually purchased by the victim as a replacement, without evidence that the replacement was similar in quality or value to the destroyed door. This evidence was insufficient to meet the State's burden to prove, as a requisite element of felony malicious injury to property, that the property damage caused by Hughes exceeded $1,000.[1] The jury's determination that Hughes was guilty of a felony offense therefore cannot stand.

The insufficiency of the evidence on the damage value does not mean, however, that the charge against Hughes must be dismissed. In this case, the jury was instructed on the lesser included offense of misdemeanor malicious injury to property, an offense which requires no proof of valuation. The jury's finding that Hughes inflicted damage on the door is supported by the evidence; only valuation evidence was lacking. Therefore, the charge of which Harris has been found guilty must be reduced to a misdemeanor. Because Hughes was given a withheld judgment, no judgment of conviction has been entered. In the event that a judgment of conviction is hereafter entered due to Hughes's failure to successfully complete probation, the conviction will be for a misdemeanor violation of I.C. § 18–7001, not for a felony.

### III. CONCLUSION

We find no error in the lower court's admission of Deputy Sanders's testimony regarding the quality of the State's photographic evidence. We also conclude that the State presented sufficient evidence on the identification of Hughes as the perpetrator. However, the State did not present evidence necessary to prove that the damage caused by Hughes exceeded $1000 in value, the threshold for a felony offense. Therefore, we remand this case for further proceedings that may be necessary in light of our determination that the offense for which Hughes has been placed on probation pursuant to a withheld judgment is a misdemeanor.

WALTERS, J., concurs.

PERRY, Judge, dissenting:

I must respectfully dissent. Upon review I would affirm that there was sufficient evidence presented in this case for a reasonable jury to conclude that Hughes damaged property in a value exceeding $1,000.

---

1. It is settled in Idaho that, in civil actions, the owner of property is competent to testify as to its market value without qualifying the owner as an expert witness. *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 43, 896 P.2d 949, 951 (1995); *Howes v. Curtis*, 104 Idaho 563, 568, 661 P.2d 729, 734 (1983); *McFarland v. Joint School District No. 365 in Elmore and Owyhee Counties*, 108 Idaho 519, 522, 700 P.2d 141, 144 (Ct.App.1985). Idaho courts, we believe, should apply the same rule in criminal proceedings, as other jurisdictions have. *See United States v.*

*Lehning*, 742 F.2d 1113, 1115 (7th Cir.1984); *United States v. McGinnis*, 783 F.2d 755, 757 (8th Cir.1986); *United States v. Robinson*, 698 F.2d 448, 456 (D.C.Cir.1983); *Smith v. State*, 300 Ark. 330, 778 S.W.2d 947, 951 (1989); *State v. Roderick*, 828 S.W.2d 729, 732 (Mo.App.1992). In the present case, however, the owner's opinion as to market value was not offered by the State and, on cross-examination, the owner acknowledged that he did not have an opinion as to the garage door's market value.