Argued January 26, affirmed February 9, 1926.

## STATE *v.* MORRIS L. ALBERT.

(242 Pac. 1116.)

**Larceny—Secrecy not Necessary Element.**

1.    Secrecy is not a necessary element of larceny.

**Larceny—Secrecy in Taking is Evidence as to Intent.**

2.    That secrecy accompanied the taking may be urged as evi-
dence of felonious intent, and, conversely, defendant taking the
property in view of the public may urge it in support of his plea
of good faith, although an open taking may be felonious.

**Larceny—Felonious Intent at Time of Taking Essential.**

3.    A felonious intent is an essential element, and must exist at
the time of taking.

**Larceny—Felonious Intent for Jury.**

4.    Existence of fraudulent or felonious intent is for the jury.

**Larceny—Motion to Direct Acquittal Properly Overruled.**

5.    Where it appeared that defendant took the property of an-
other, asported it a distance of twenty-seven miles, and converted
it to his own use, and that the property was of some value, a mo-
tion to direct an acquittal was properly overruled.

---

1.    See 17 R. C. L. 11.
3.    Intent as essential to larceny, see note in 51 Am. Rep. 312.
See, also, 17 R. C. L. 24.

Criminal Law—Witness Held Properly Qualified to Testify as to Value of Milk Condensery Machinery Stolen.

6. In a prosecution for larceny of machinery taken from milk condensery plant which had burned, a witness was properly qualified to testify to its value, where it appeared he was acquainted with the property before and after the fire, that he had viewed it, that he had agreed to repair it, and that he had bought similar property.

Criminal Law—Qualification of Witness to Express Opinion, Within Discretion of Trial Judge, not Reviewable Save for Abuse.

7. The qualification of a witness to express an opinion is a matter to be determined in the first instance by the trial judge, and his ruling thereon will not be disturbed on appeal except for abuse of discretion.

Larceny—Stolen Property must have Value.

8. To be the subject of larceny, stolen property must have a value.

Larceny—Value of Property Stolen Should be Shown to Determine Degree of Offense.

9. In a prosecution for larceny, the value of the property stolen should be shown to determine the degree of the offense.

Larceny—Value of Stolen Machinery Broken Up for Scrap-iron Held Its Market Value Before Destruction.

10. Where defendant, prosecuted for larceny of milk condensery machinery, had broken it up and sold it as junk, the value of the property was not its value as scrap-iron, but its market value at place where stolen immediately before its destruction.

Larceny—Breaking Up Property Stolen to Facilitate Transportation is Part of Taking.

11. Where the thief breaks up the property stolen into pieces in order to handle it with less difficulty, the act of breaking it up is a part of his wrongful act in the taking thereof.

Criminal Law—Reading from Exhibit Showing Defendant's Former Conviction Held not Improper Argument.

12. In a larceny prosecution, it was not improper to allow the district attorney in his argument to read from exhibits showing defendant's former conviction of larceny, such exhibit having been admitted during the trial on the question of defendant's good faith as a witness.

---

8. Proof to determine value of property as bearing on degree of larceny, see note in Ann. Cas. 1912A, 895. See, also, 17 R. C. L. 65.

Criminal Law—Credibility of Witnesses and Weight of Testimony
    must be Determined by the Jury Alone.

13. It is for the jury alone to determine the credibility of witnesses and the weight to be given to their testimony.

Criminal Law, 16 C. J., p. 929, n. 86, p. 930, n. 93; 17 C. J.,
p. 241, n. 44, p. 243, n. 53.
    Evidence, 22 C. J., p. 693, n. 97.
    Larceny, 36 C. J., p. 734, n. 13, p. 736, n. 49, p. 752, n. 69, 70,
p. 761, n. 58, p. 766, n. 86, p. 798, n. 87, p. 799, n. 89, p. 800, n. 8,
p. 801, n. 17, 23, p. 912, n. 42, p. 913, n. 54, p. 918, n. 28, p. 921, n. 64.
    Witnesses, 40 Cyc., p. 2607, n. 61, p. 2640, n. 86.

From Yamhill: ROBERT TUCKER, Judge.

Department 2.

The defendant was convicted of the crime of larceny. The indictment upon which he was tried accused him of the theft of the following personal property belonging to one A. P. Henningson:

1 ice machine, of the value of $150.
2 sets of boiler grates, of the value of $125.
1 steam engine, of the value of $150.
    Doors and other parts of two sterilizers, of the
        value of $250.
    Copper and copper coil, of the value of $75.
    Water-pipe and fittings, of the value of $100.

He appeals, assigning error of the court in refusing to allow his motion for a directed verdict; in admitting the testimony of C. H. Fitzpatrick relating to the value of the property; and in overruling defendant's objection to the action of the district attorney in his closing argument in reading from Exhibit "D," being a certified record showing the defendant's former conviction of the crime of larceny.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John A. Mears* and *Mr. Edward G. Amme,* with

oral arguments by *Mr. Mears* and *Mr. Robert A. Mears.*

For respondent there was a brief and oral argument by *Mr. R. L. Conner,* District Attorney.

BROWN, J.—There is no contention here that the property is other than personalty in character. The indictment charges a single offense, and the case was tried upon the theory that the taking of the several pieces of personal property described therein constituted but one offense. This theory will be followed here. That the taking of the property constitutes a single larceny if committed pursuant to a single impulse and in execution of a general felonious scheme, see 2 Wharton's Criminal Law (11 ed.), § 1169; 1 McClain on Criminal Law, 584; 36 C. J., Larceny, §§ 218, 219; 7 L. R. A. (N. S.), 520, 523, note; 6 Ann. Cas. 736, note; 88 Am. St. Rep. 559.

The defendant does not deny that he transported from Newberg to his place of business in Portland the personal property alleged to have been stolen. Newberg is situate in Yamhill County, Oregon, twenty-seven miles from Portland, where the defendant was engaged in the "junk business."

The property described in the indictment had been used, or was intended to be used, as equipment for a milk condensery plant situate at Newberg, which plant was the property of the above-named A. P. Henningson. The most of this property had been housed in a building that was burned a few weeks prior to the alleged theft and had been damaged by the fire. After the fire, the property remained on the site of the burned building and was in the care of one C. H. Fitzpatrick, who operates a foundry and

machine-shop at Newberg, not far distant from the milk condensery plant.

The defendant contends that he was a good-faith purchaser of the property for value. He claims that a stranger by the name of J. Perry came to his place of business at Portland representing that he was the owner of the property and stating that he desired to sell the same. Some time later, according to defendant's story, he and Perry met at Newberg and defendant paid Perry the sum of $82.50 in full consideration for the property. Thereafter, for nine several days, defendant was engaged in breaking up the property and transporting it to Portland from the site of the burned building, which, according to the testimony, was near a public thoroughfare and in plain view.

The defendant was accused of violating the provisions of Section 1947, Or. L., reading:

"If any person shall steal any goods or chattels, * * which is the property of another, such person shall be deemed guilty of larceny. * * "

He requested that the jury be instructed to return a verdict of not guilty, upon the theory that he was innocent of the crime of larceny. In this connection, we are called upon to determine the essential elements of the term "larceny." An eminent jurist, in discussing the meaning of that term, has written:

"It has been found by writers on the subject (larceny) to be impossible to give any short description of the offense which shall be accurate and at the same time embody the various technical distinctions which have been recognized in administering the law with reference to this crime." 1 McClain on Criminal Law, § 535.

A frequently cited short definition is that of Blackstone, who defines the term "larceny" as "the felonious taking and carrying away of the personal goods of another." 4 Bl. Com. 229.

The term "felonious," as used in the definition of "larceny," is synonymous with "fraudulent."

The following definition from Rapalje, Larceny and Kindred Offenses, Section 1, could have been invoked in support of defendant's theory:

" 'Larceny' is derived from the Norman French 'larcyn,' Latin 'latrocinium,' and signifies the felonious, wrongful, and fraudulent taking and carrying away by any person, of the personal goods of another, with the felonious intent to convert them to his own use and make them his property, without the consent of the owner. The taking must be without the least color of right or excuse, against the will of the owner, and from his actual or constructive possession. It must be done fraudulently and secretly, so as not only to deprive the owner of his property, but also to attempt to leave him without knowledge of the taker."

In the case at bar, there was neither secrecy nor concealment in the taking and asportation of the property involved herein. It follows that, if Mr. Rapalje's definition of the term "larceny" is an accurate one, the defendant has solid grounds upon which to predicate his assignment of error based upon the court's refusal to instruct the jury to acquit him. For the doctrine that the larceny must have been committed secretly, the author relied upon the case of *State* v. *Ledford,* 67 N. C. 60. However, the doctrine enunciated by that case has been set aside by the same court that announced it. See *State* v. *Powell,* 103 N. C. 424 (9 S. E. 627, 14 Am. St. Rep. 821, 4 L. R. A. 291); *State* v. *Hill,* 114 N. C. 780 (18 S. E. 971).

Furthermore, other jurisdictions have almost invariably refused to accept the doctrine taught by the Ledford case.

1, 2. Secrecy is not a necessary element of larceny. The fact that secrecy accompanies the taking may be urged by the state as an evidentiary circumstance from which a fraudulent or felonious intent may be inferred. Conversely, the fact that the defendant openly takes the property in broad daylight, in view of the public, is a legitimate circumstance to be urged in support of his plea of good faith. But, as a matter of law, an open taking may be a felonious taking: 2 Cyclopedia of Crim. Law, Brill, § 756; 36 C. J., Larceny, § 56.

3, 4. A felonious intent is an essential element of every larceny, and such intent must exist at the time of the taking: *State* v. *Meldrum,* 41 Or. 380 (70 Pac. 526); *State* v. *Hinton,* 56 Or. 428 (109 Pac. 24). But the question of the existence of the fraudulent or felonious intent is one for the jury, and not for the court. The jury may infer intent from words, acts, or circumstances surrounding the transaction.

5. We have seen that the property taken by defendant was that of another; that defendant asported the property a distance of twenty-seven miles; that he converted it to his own use; and, finally, that such property was of some value and, therefore, was the subject of larceny. The motion to direct an acquittal was properly overruled.

6, 7. The defendant asserts that the court erred in permitting the witness C. H. Fitzpatrick to give testimony as to his opinion of the value of the property stolen. The record shows that the witness was acquainted with the property before and after the milk condensery plant had burned; that it had been

placed in his care; that he had viewed the property; and that it was understood between Fitzpatrick and the owner that, after the insurance was adjusted, the property was to be repaired by Fitzpatrick. Hence his familiarity therewith. Witness had also bought similar property. There was no mistake in permitting him to testify. Besides, the qualification of a witness to express an opinion is a matter to be determined in the first instance by the trial judge, and his ruling thereon will not be disturbed on appeal except for abuse of discretion: *Multnomah County* v. *Willamette Towing Co.*, 49 Or. 204, 221 (89 Pac. 389); *Laam* v. *Green*, 106 Or. 311 (211 Pac. 791).

8–11. The question of the value of personal property is of twofold importance: First, stolen property must have a value in order to be the subject of larceny. Second, that value should be shown in order to determine the degree of the offense. To go a step further: In cases wherein the stolen property is smashed or rendered useless for its original purpose, the value of such property is not its value after having been demolished or broken up, but is its value at the inception of the taking thereof. Thus, in the case at bar, the value of the property was not its value as scrap-iron after the defendant had broken up the equipment, but was its market value at Newberg immediately prior to its destruction by him. The act of the defendant in breaking the equipment into pieces in order to enable him to handle it with less difficulty than in its original state constitutes a part of his wrongful act in the taking thereof: 1 McClain on Criminal Law, § 485.

12, 13. The next objection relates to the alleged abuse of the right of argument by the district attorney in reading from an exhibit showing defend-

ant's former conviction of larceny, which exhibit was admitted into the record as evidence during the trial. The record does not point to any improper use made of that exhibit. It was not admitted to prove theft, but as impeaching evidence only, and it tended strongly to impeach the defendant as a witness. If he purchased the property from a stranger as he said, honestly believing that such stranger had a right to sell the same, and if he was acting in that belief when he carried it away, he was not guilty of theft: 2 Wharton's Crim. Law (11 ed.), § 1121. It therefore became the duty of the jury to ascertain the facts; and, for the purpose of throwing light upon the credibility of the witness when testifying to his good faith, the impeaching record was relevant. In the absence of any showing to the contrary, we assume that it was used for the purpose of impeachment alone. The unknown man from whom the defendant swore that he purchased the property has never been found. The defendant testified that he tried to locate him but that his search was in vain. The jury evidently believed the man to be a myth, and it is the province of the jury alone to determine the credibility of the several witnesses and the weight to be given to their testimony.

We have considered all questions presented by the record and conclude that this case must be affirmed.                                              AFFIRMED.

McBRIDE, C. J., and RAND and BELT, JJ., concur.