438 P.2d 442

**STATE of Arizona, Appellee,**

**v.**

**Troy Clyde COPE and Lloyd Otto Taylor, Appellants.**

**No. I CA–CR 141.**

Court of Appeals of Arizona.

March 13, 1968.

Darrell F. Smith, Atty. Gen., T. M. Pierce and Charles S. Pierson, Asst. Attys. Gen., for appellee.

Vernon B. Croaff, Public Defender, Grant Laney, Deputy Public Defender, for appellants.

DONOFRIO, Judge.

The defendants, appellants herein, were each charged with two felonies by separate informations and their cases consolidated for trial. The informations charged each with one count of Grand Theft, a felony, and one count of Severing of an Electric Line, a felony. After verdicts of guilty, each was adjudged guilty and sentenced to serve a term of not less than three years nor more than five years in the state prison on each count, the sentences to run concurrently. They jointly bring this appeal.

On September 1, 1966, the two defendants, along with one William Lapsley, drove to a deserted area near Lake Pleasant in Maricopa County, "going to look at the copper wire to steal". They discovered an electrical transformer lying on the ground not far from a pump which had an electric line running to it. After waiting for some hunters to leave the area, the three systematically stripped the transformer of the copper wire it contained, using tools stolen from a nearby house. They then disconnected the fuses found on an electric pole and cut down three lines running from the fuse box to another pole, as well as three more lines running from the second pole. With the aid of the pickup truck and a chain, a copper conduit cable was pulled from the nearby pump. The trio failed in their attempts to gain access to other transformers still on the poles and other fuse boxes in the area, and so returned to Phoenix with the copper wire they had taken.

After the three separated for the night, William Lapsley called the Police Department and reported their activities. The next morning the two defendants met at Lapsley's house, burned the insulation off part of the wire and took it to a scrap metal dealer for sale. The dealer informed them that the "law" was looking for them and they left. After leaving, they were followed by Sheriff's officers who had been informed that the attempted sale of stolen wire would be made. Lapsley was driving the pickup truck containing the wire and was stopped for driving while under the influence of intoxicating liquor. The two defendants were arrested on a drunk and disorderly charge and the pickup impounded. After an investigation, the felony charges involving the cutting of the line and theft of the wire were filed. William Lapsley testified for the State at the trial and the charges against him were not pressed.

During the trial it was established that the lines going from the Arizona Public Service poles to the fuse box, together with the copper wire taken from the transformer, had a value of $92.00. The transformer itself had a value of $117.00 on the books of the company. The estimator testified that was the value when originally acquired and that its value never depreciated. In addition, defendants took wire from a pump belonging to a customer of Arizona Public Service, which had an estimated value of $50.00 to $75.00.

The first issue raised is whether the evidence is sufficient to sustain a verdict of guilty to the charge of grand theft in that it fails to show the value of the property taken to be more than one hundred dollars as provided by A.R.S. § 13–663, subsec. A, par. 1. Defendants' contention is that according to the evidence the wire taken from the complainant had, at most, a valuation of $92.00; that the value of $117.00 for the transformer may not be considered as defendants were not charged with stealing the transformer itself, but merely the wire from the inside. The value of the wire taken from the transformer, included in the $92.00 figure, is fixed at $30.00. Although the transformer itself was not taken from the scene,

the evidence shows that only the shell remained. Defendants further contend that the amount of $50.00 to $75.00 for the wire taken from the pump cannot be included since this property was not owned by Arizona Public Service from whom it was allegedly stolen, but belonged to one of its customers. We believe it will not be necessary to pass upon this latter issue if the value of all the other copper wire taken exceeds $100.00. To reiterate the question, defendants' position is that the value of the transformer is not to be considered in determining the value of the property taken. With this we cannot agree.

Aside from the fact that we believe it inconceivable that the transformer was not asported to some degree during the progress of the commission of the offense, we will assume that it was never moved. We must, however, assume as established by the evidence, that the transformer was nothing more than a hollow shell of insignificant value once the copper forming the coils therein was removed. By defendants' act the transformer was reduced to a shell by the removal of wire which had an intrinsic value of only $30.00. The act of destruction was done to suit the convenience of the defendants in that it was the copper wire which they wanted as it had a ready market at the salvage yard. There can be no question but that the owner suffered the loss of the transformer valued at $117.00. The defendants feloniously deprived the owner of the article itself by removing the principal thing of value which was in it. In all logic, it was the value of this copper wire in place that was taken from the owner. It was not simply copper wire of only intrinsic value that was stolen, but rather wire which, by reason of its patterned arrangement and design served special functions and, as such, had a special value.

We have held that replacement cost at the time of the theft is sufficient evidence for the trier of fact to determine that the value of goods stolen was in excess of $100.00. State v. Randle, 2 Ariz.App. 569, 410 P.2d 687 (1966). That case was similar in some respects to the instant case. Defendant had been convicted of grand theft for taking three Arizona Public Service transformers. Testimony as to the replacement cost, as well as original cost, was allowed. The Court of Appeals held that the evidence was sufficient, and in so doing, quoted with approval from Beasley v. Commonwealth, Ky., 339 S.W.2d 179 (1960), as follows:

> " 'For the purposes of a grand larceny prosecution the value of the stolen property is not the original cost nor the sale price for junk, but evidence of such cost or price is admissible as tending to establish the value. (Citations omitted.) The true criterion is the fair market value of the property at the time and place it was stolen, if there be such a standard market; if not, the value must be arrived at from the facts and circumstances and the uses and purposes for which the article was intended to serve. (Citations omitted.) In other jurisdictions evidence of replacement cost has been held admissible in the absence of an established market value.' " 2 Ariz.App. at 571, 410 P.2d at 689.

It is apparent that while copper wire has an intrinsic value of approximately thirty-seven cents per pound as scrap, when it is in place in certain complex equipment its value is greatly enhanced. A person stealing an item with such a special value cannot claim that since he could get only the ordinary price for the parts, he is not guilty of theft of the higher amount. The Supreme Court of Oregon in State v. Albert, 117 Or. 179, 242 P. 1116 (1926), stated:

> "The question of the value of personal property is of twofold importance: First, stolen property must have a value in order to be the subject of larceny. Second, that value should be shown in order to determine the degree of the offense. To go a step further: In cases wherein the stolen property is smashed or rendered useless for its original purpose, the value of such property is not its value after having been demolished or broken up, but its value at the inception of the taking there-

of. Thus, in the case at bar, the value of the property was not its value as scrap iron after the defendant had broken up the equipment, but was its market value at Newberg immediately prior to its destruction by him. The act of the defendant in breaking the equipment into pieces in order to enable him to handle it with less difficulty than in its original state constitutes a part of his wrongful act in the taking thereof. 1 McClain on Criminal Law § 485." 242 P. at 1118.

This rule would apply equally as well to the situation at hand where the taking of a part destroys the value of the whole.

52 C.J.S. Larceny § 60 c. agrees in principle as follows:

> "Change of condition. The act of the thief in smashing a valuable piece of machinery and reducing its value to that of old iron, before stealing it, will not reduce the grade of the offense from grand to petit larceny, *the value of the machine being its market value before destruction, at the place from which it was stolen.*" (emphasis ours) At page 852.

 We therefore hold that the decision of the jury was reasonably supported by the evidence, irrespective of the wire taken from the pump, in finding the value of the copper wire exceeded $100.00. The value of the copper wire in place taken from the transformer more nearly approximates $117.00 and certainly more than $30.00, which is all that is necessary to add to the $62.00 value placed on the other wire to make the total amount more than $100.00.

The other question presented is whether or not the testimony of the accomplice Lapsley was adequately corroborated as required by A.R.S. § 13–136. We find no difficulty in answering this issue in the affirmative. The testimony at the trial showed that defendants when arrested were in the act of transporting the stolen goods in question. The pickup truck in which they were riding with Lapsley was shown to be at the scene of the theft. Tire tracks of the truck were present. All the physical evidence of removal and destruction of the items was found at the scene. Tools used to sever the wire in the manner it was severed were in possession of defendants. Arresting officers testified that defendant Cope said when arrested that the truck was his. Other evidence also substantiates that defendants burned the insulation off the wire and attempted to sell it. All this evidence goes to corroborate the testimony of the accomplice in the manner required by the law.

As to the count involving the crime of Severing of an Electric Line, we find sufficient evidence to cover all the elements of this charge.

Judgment affirmed.

CAMERON, C. J., and STEVENS, J., concur.