**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35635**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2010 Opinion No. 33** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: May 13, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| LONNIE ROBERT JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for grand theft <u>reduced</u> to petit theft; order for restitution <u>vacated</u>, and case <u>remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

LANSING, Chief Judge

Lonnie Robert Johnson was convicted by a jury of grand theft. He appeals, arguing that there was insufficient evidence to support the jury's grand theft verdict. He also asserts that the district court erred by giving insufficient jury instructions, excluding a defense witness's testimony as a discovery violation sanction, and assessing restitution, and that the prosecutor committed misconduct during closing arguments.

**I.**

**BACKGROUND**

Around October 19, 2007, Union Pacific Railroad (UPR) reported the theft of copper signal wire that had been cut down from UPR's signal poles. A security officer with UPR, Dan Milovanovic, found at the location of the theft a T-shirt with the initials L.J. written on the collar and a plastic bag containing two receipts for the sale of copper wire to Pacific Steel and

1

Recycling (PSR) by Johnson. The receipts indicated that Johnson had sold copper wire to PSR on October 4, 2007, and October 10, 2007. Milovanovic went to PSR and found what he believed to be UPR's six-gauge copper signal wire, chopped into short pieces, in one of the scrap metal bins. PSR employees informed Milovanovic that the wire in the bin had been sold to PSR by Johnson on October 22, 2007. PSR furnished a receipt for that sale which had two names on it, indicating that Johnson had told PSR that the wire belonged to Randy Arterburn and that Johnson was selling it for Arterburn. When officers stopped Johnson the next day in Lincoln County to arrest him for these wire thefts, they found other UPR wire in his vehicle. Johnson was charged in Twin Falls County with grand theft, Idaho Code §§ 18-2403(4), 18-2407(1), for disposing of stolen copper signal wire in the October 4, 10 and 22 sales to PSR. Johnson was not charged in the present case for theft of the wire found in his pickup when he was apprehended in Lincoln County.

At trial, Johnson testified that he found the first two sets of copper wire he sold to PSR on his brother's property after his brother died. Johnson stated that the third set of copper wire he sold to PSR he found while driving near UPR's railroad. He said the wire had become caught under his vehicle and he decided to collect and sell it. He denied ever cutting wire down from UPR's signal poles and denied any knowledge that the wire had been cut down or stolen by another.

To confirm his version of events, Johnson sought to present the testimony of Randy Arterburn's brother, James Arterburn, who would testify that he saw the copper wire at Johnson's brother's house and gave Johnson permission to sell it under Randy Arterburn's PSR account. However, Johnson had not disclosed this witness in pretrial discovery responses nor at any time until the second day of trial, after the State had rested. Johnson admitted he had been aware of this witness previously, but said he had been unable to contact him earlier. The district court excluded the testimony as a sanction for the nondisclosure. The jury found Johnson guilty, and the district court imposed sentence and ordered Johnson to pay $2,000 in restitution.

On appeal, Johnson argues that the trial evidence was insufficient to show that the value of the copper wire exceeded $1,000, the threshold value for a theft to constitute a felony rather than a misdemeanor, that the district court gave erroneous jury instructions on the valuation issue, that the district court erred in excluding Arterburn's testimony as a sanction, that the

2

prosecutor committed misconduct during closing arguments, and that the district court erred in its assessment of restitution.

## II.

## DISCUSSION

**A.      Proof of Value**

Johnson first argues that he could be convicted of, at most, the misdemeanor of petit theft because the trial evidence did not show that the value of the stolen wire exceeded $1,000. Under Idaho law, a theft constitutes a felony if the value of the property taken exceeds $1,000, I.C. § 18-2407(1)(b)(1). If the stolen items are of a lesser value, the offense is petit theft, a misdemeanor. I.C. § 18-2407(2). For purposes of the theft statute, "value" means "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." I.C. § 18-2402(11)(a). Thus, under this statutory scheme, in a prosecution for grand theft the State must prove either that the market value of the stolen property exceeded $1,000 or it must prove a market value cannot be satisfactorily ascertained and may thereupon rely on the replacement cost as the value. If no value can be satisfactorily ascertained under the standards of I.C. § 18-2402(11)(a), then the property's value is deemed to be $1,000 or less. I.C. § 18-2402(11)(c).

A jury's finding that a disputed element of a crime has been proven will not be set aside on appeal if there is substantial evidence upon which a reasonable jury could have found that the State sustained its burden of proof beyond a reasonable doubt. *State v. Estes*, 148 Idaho 345, 347, 223 P.3d 287, 289 (Ct. App. 2009); *State v. Beebe*, 145 Idaho 570, 573, 181 P.3d 496, 499 (Ct. App. 2007); *State v. Thomas*, 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct. App. 1999); *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Byington*, 132 Idaho 589, 593, 977 P.2d 203, 207 (1999) (quoting *Bullard v. Sun Valley Aviation, Inc.*, 128 Idaho 430, 432, 914 P.2d 564, 566 (1996)). Thus, the query presented on this appeal is whether there was either (1) substantial evidence that the market value of the wire at the time and place of the theft exceeded $1,000 or, failing that, (2) substantial evidence that the market value cannot be satisfactorily ascertained, together with substantial evidence of the cost of replacement wire.

3

Two types of valuation evidence were admitted at Johnson's trial. First, it was shown that the salvage value of the stolen wire was approximately $665, which is the price paid by PSR to Johnson for the wire as scrap. Second, an employee of UPR testified that the company had to pay approximately $2,000 for replacement signal wire. On this evidence, Johnson contends that the salvage value was the demonstrated market value, while the State maintains that the replacement cost was the correct measure.

Although salvage value may be admissible and relevant to determine the value of stolen items, it is not ipso facto the market value of property that has been sold for scrap. As we stated in *State v. Hughes*, 130 Idaho 698, 703, 946 P.2d 1338, 1343 (Ct. App. 1997), if market value cannot be established, value can be shown by any number of measures other than just salvage value including purchase price, replacement cost, and the property's general use and purpose. The choice of which measure is appropriate depends upon the circumstances of the individual case. Salvage value generally will not be the appropriate measure if it was the defendant's actions that caused the item to be useless for anything other than scrap. *State v. Cope*, 438 P.2d 442, 444-45 (Ariz. Ct. App. 1968); *McClure v. State*, 673 S.E.2d 856, 858 (Ga. Ct. App. 2009); *State v. Albert*, 242 P. 1116, 1118 (Or. 1926).

Because the salvage value was not necessarily determinative of the market value of the wire in its condition when stolen, before being chopped up for sale to PSR, we look for other evidence of market value. The State presented no evidence of market value of the used copper wire, but contends on appeal that it showed that a market value could not be satisfactorily ascertained and that the State, therefore, was entitled to use replacement cost as the proper measure of value pursuant to I.C. § 18-2402(11)(a). The absence of a market value was shown, the State contends, through the testimony of a UPR representative that it is not good practice to reuse "chopped up" signal wire. We disagree. The valuation query should address the value of the signal wire when it was stolen, before it was chopped up. As the State did not pursue a line of questioning concerning whether there was a market for used wire of comparable characteristics and quality to that stolen, there is no evidence that a market value was not satisfactorily ascertainable. Therefore, resort to replacement value was not authorized under I.C. § 18-2402.

Because there was insufficient evidence to support a finding that the value of the stolen wire exceeded $1,000, Johnson's judgment of conviction must be reduced to a misdemeanor,

petit theft, unless other claimed errors raised by Johnson in this appeal necessitate a new trial for that charge.[1]

**B.    Exclusion of Undisclosed Defense Witness's Testimony as a Discovery Violation Sanction**

After the prosecution had rested, Johnson sought permission from the district court to allow James Arterburn to testify that he had seen copper wire behind the home of Johnson's brother and that Arterburn had given Johnson permission to use Arterburn's brother's PSR account to sell the wire.  Johnson had not, however, disclosed Arterburn as a potential witness before trial.  The district court did not permit Arterburn to testify because pretrial disclosure of witnesses had been required by both a pretrial order and the State's discovery request.  The court said that Johnson's earlier inability to contact Arterburn did not prevent his disclosure as a potential witness and that the State was entitled to such notice before it had rested its case.  The court consequently disallowed Arterburn's testimony as a sanction for Johnson's discovery violation.  On appeal, Johnson argues that this order constituted an abuse of the district court's discretion.

When reviewing a trial court's decision to exclude a defense witness as a discovery violation sanction we apply an abuse of discretion standard.  *State v. Harris*, 132 Idaho 843, 846, 979 P.2d 1201, 1204 (1999); *State v. Albert*, 138 Idaho 284, 287, 62 P.3d 208, 211 (Ct. App. 2002).  In examining a trial court's discretionary decision, this Court inquires:  (1) whether the district court correctly perceived the issue as one of discretion, (2) whether the district court acted within the boundaries of its discretion and consistently with any legal standards applicable to the specific choices before it, and (3) whether the district court reached its decision by an exercise of reason.  *Id*.

The right of an accused to call witnesses in his defense is guaranteed by the Compulsory Process Clause of the Sixth Amendment.  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Harris*, 132 Idaho at 846, 979 P.2d at 1204.  However, the State also has a legitimate interest in obtaining timely and complete discovery responses from a defendant.  *Taylor*, 484 U.S. at 412 n.17; *Albert*, 138 Idaho at 287, 62 P.3d at 211.  To accommodate these competing interests, when determining whether to exclude defense evidence due to late disclosure or nondisclosure, the trial

---

[1]    In light of our reduction of the conviction to petit theft, Johnson's claim of error in the jury instructions concerning valuation is moot and we do not address it.

court must weigh the prejudice to the State against the defendant's right to a fair trial. *Harris*, 132 Idaho at 847, 979 P.2d at 1205; *Albert*, 138 Idaho at 287, 62 P.3d at 211. It is error for the trial court to exclude a witness based solely on late disclosure if there has been no showing of prejudice to the State. *State v. Lamphere*, 130 Idaho 630, 634, 945 P.2d 1, 5 (1997). In addition to weighing the competing interests at stake, the trial court should consider whether less severe remedies would be sufficient for untimely disclosure, such as a short continuance, a mistrial, or sanctions against defense counsel, before excluding a defense witness. *State v. Thomas*, 133 Idaho 800, 803, 992 P.2d 795, 798 (Ct. App. 1999); *State v. Winson*, 129 Idaho 298, 303, 923 P.2d 1005, 1010 (Ct. App. 1996).

In this case, Johnson's offer of proof indicated that Arterburn would testify that "he saw the two rolls of wire behind [Johnson's] brother's house. He went with him the day that he went to get the trailer, and also that he gave him permission to put his, that roll, the deposit on the 22nd on the account owned by himself and his brother." Johnson claimed this was important and relevant to:

> help the jury get a full picture of what happened, to help them get an accurate picture of where the wire that's subject to this case came from and whether or not Mr. Johnson knew that it was stolen. I believe that without his testimony it's possible that the jury would not believe Mr. Johnson on his own and that that would materially damage our case.

Johnson thus showed that the proffered testimony was relevant to show an alternative source of some of the wire that was alleged to have been stolen from UPR and to corroborate his testimony that the wire came from the residence of Johnson's deceased brother. The record does not disclose that the district court conducted the required balancing of the prejudice to the State against Johnson's right to a fair trial or considered whether other measures, such as a brief continuance to permit the State to interview Arterburn, would have mitigated any prejudice. Therefore, we conclude that the district court abused its discretion in excluding Arterburn's testimony entirely without considering less severe options.

The erroneous exclusion of evidence does not necessitate a new trial, however, if the error was harmless. An error is harmless when the Court can declare, beyond a reasonable doubt, that the result of the trial would have been the same absent the error. *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007); *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

6

We conclude that, in view of our determination that the trial evidence supports only a misdemeanor conviction, the exclusion of Arterburn's testimony has become harmless. Although such testimony that at least part of the wire delivered by Johnson to PSR was not stolen would have been significant on the felony charge, where the total value of the stolen wire was a material issue, it is of much less relevance to a misdemeanor charge, which requires no proof of value. We conclude that there is such compelling evidence that at least a portion of the wire was stolen from UPR by Johnson that the verdict would be the same even if Arterburn's testimony had been admitted. This evidence showed that on or about October 19, at the scene where signal wire had been cut down and stolen from UPR poles, Milovanovic found both a T-shirt bearing Johnson's initials and two receipts issued from PSR to Johnson for the sale of copper wire. Milovanovic then found signal wire identical to that stolen from UPR in PSR's scrap metal bins. Further, on October 23 when Johnson was apprehended by law enforcement, two types of wire used on UPR's lines were found in his vehicle, and though his possession of that wire on October 23 did not form the basis of the charge in this case, it was powerful evidence that Johnson was engaged in a continuing enterprise of stealing UPR wire. Therefore, on the question of Johnson's guilt of misdemeanor petit theft, the erroneous exclusion of Arterburn's testimony was harmless beyond a reasonable doubt.

## C.     Prosecutorial Misconduct in Closing Arguments

Lastly, Johnson complains that there were two episodes of prosecutorial misconduct during closing argument, although he made no objection to the prosecutor's comments at trial. When a party fails to preserve an issue for appeal through a timely objection, the issue will be reviewed on appeal only if it constitutes fundamental error. *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct. App. 1999). The Idaho Supreme Court has defined fundamental error as,

> such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*State v. Johnson*, 145 Idaho 970, 979, 188 P.3d 912, 921 (2008); *State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). The Supreme Court has also utilized other definitions of fundamental error, describing it as error which "so profoundly distorts the trial that it produces manifest injustice and deprives

the accused of his constitutional right to due process." *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991). *See also State v. Anderson*, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007); *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003); *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992). In addressing a claim of fundamental error, we begin by determining whether there was error at all. *See Anderson*, 144 Idaho at 748, 170 P.3d at 891.

The first component of the prosecutor's closing argument that Johnson challenges is the following statements:

> On a new note, ladies and gentlemen, the railroad is a long celebrated industry, but it is definitely in decline. There is a lot of competition out there these days. There is semis, boats, planes, and most of all technology, but that doesn't make it okay for thieves to be targeting railroad property. Railroad lines are not for scavengers and that is what the defendant is. He is a scavenger. He is a buzzard. He is picking off the bones of the railroad industry.

Johnson contends that these statements included both an appeal to the jury to render a decision based upon sympathy for the railroad and an improper use of demeaning terms in referring to Johnson.

In determining whether statements made in closing arguments are improper, we note that a prosecutor has considerable latitude in closing argument and has the right to discuss inferences arising from the evidence. *State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141 (1997); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. This latitude is not boundless, however, and it is impermissible to appeal to the emotion, passion, or prejudice of the jury through the use of inflammatory tactics, *State v. Gross*, 146 Idaho 15, 20-21, 189 P.3d 477, 482-83 (Ct. App. 2008); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Urging the jury to render a verdict based on factors other than the evidence and jury instructions, such as sympathy for the victim, have no place in closing arguments. *Beebe*, 145 Idaho at 576, 181 P.3d at 502. It is also improper for a prosecutor to use inflammatory words to describe the defendant. *State v. Hairston*, 133 Idaho 496, 507-08, 988 P.2d 1170, 1181-82 (1999) (holding that it was improper for the prosecutor to refer to the defendant as a "murdering dog"); *State v. Kuhn*, 139 Idaho 710, 715-16, 85 P.3d 1109, 1114-15 (Ct. App. 2003) (holding that it was improper for the prosecutor to call the defendant "a liar and a thief"). Prosecutorial misconduct in closing argument will be considered fundamental error when it is "calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to

determine guilt on factors outside the evidence." *Porter*, 130 Idaho at 785, 948 P.2d at 140; *Kuhn*, 139 Idaho at 715, 85 P.3d at 1114.

We conclude that the challenged comments of which Johnson complains for the first time on appeal, do not rise to the level of fundamental error. The reference to the victim railroad's hardship did not amount to urging the jury to render a verdict based on the victim's needs, and although improper, the prosecutor's likening Johnson to a buzzard was brief and isolated and was not so egregious nor inflammatory as to go to the basis of Johnson's rights or deprive him of a fair trial. Therefore, we find no fundamental error.

Johnson also asserts that the prosecutor committed prosecutorial misconduct by misstating Johnson's testimony twice during closing argument. One alleged mischaracterization occurred when the prosecutor stated, in the context of discussing the copper wire found in Johnson's truck on the day of his arrest:

> Well according to the officer, after the defendant had waived his Miranda rights, he made admissions to the officer. Yeah, I knew it was probably stolen. Yeah, but I didn't cut it down. That was his response. I knew I shouldn't have had it, but I'm not the one that cut it down.

The other instance occurred when the prosecutor stated that Johnson had positively identified the third batch of wire sold to PSR as UPR's wire.

It is improper for a prosecutor to misrepresent or mischaracterize the evidence. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Again, we conclude, however, that no fundamental error has been shown. The prosecutor's statement that Johnson admitted to knowing the wire was "probably stolen" was inaccurate. It was permissible, however, to infer from Johnson's statement to an officer that he knew it was "wrong" to possess the wire found in his truck on the day of his arrest that Johnson knew or strongly suspected that the wire was stolen. The prosecutor's overstatement of this permissible inference by calling it an actual admission was error, but does not rise to the level of fundamental error. Similarly, although the prosecutor misstated the evidence by saying that Johnson identified the third batch of wire sold to PSR as UPR's wire, for Johnson made no such identification at trial, in context this comment amounts to a lack of precision in closing argument rather than an outright misrepresentation of the evidence. The prosecutor's words were: "[T]he defendant and the officer both I.D.'d the third batch that came in as Union Pacific Railroad wire because that was a different color than the previous wire the defendant had brought in with the

green tint. The defendant even said, yes, that receipt from the 22nd, that's the wire that I brought in that the officers saw in the bin." The prosecutor's use of the term "I.D.'d" appears to reference Johnson's testimony that the third batch of wire he sold to PSR was the same batch of wire shown in photograph exhibits that had been previously identified as UPR wire by Officer Milovanovic. We find in these remarks no prosecutorial misconduct amounting to fundamental error.

## D. Restitution

Lastly, Johnson argues the district court erred in awarding restitution in the amount of $2,000 based solely on the evidence produced at trial. During Johnson's sentencing hearing the prosecutor initially asked for additional time to present a restitution request. Defense counsel also requested additional time and requested a restitution hearing. The prosecutor then disagreed, arguing that no hearing was needed because the State had already established the value of the copper wire at trial as the replacement value and that Johnson only wished to relitigate that already-established figure. Ultimately, the district court determined that it had already heard enough valuation evidence and ordered restitution in the amount of $2,000 without further evidence from Johnson or the prosecutor concerning UPR's economic loss.

Idaho Code § 19-5304(2) authorizes the court in criminal cases to order the payment of restitution to the crime victim if the crime resulted in an economic loss to the victim. For purposes of the restitution statute, "economic loss" includes not only the value of property taken, destroyed or damaged, but also expenses incurred by the victim as a result of the criminal conduct. I.C. § 19-5304(1). Section 19-5304(1)(c) provides that value, for restitution purposes, is subject to the same definition as found in the theft statutes. The court is directed to determine the amount of economic loss based upon the preponderance of the evidence submitted by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6); *Smith*, 144 Idaho at 692, 169 P.3d at 280. "Each party shall have the right to present such evidence as may be relevant to the issue of restitution . . . ." I.C. § 19-5304(6). Determination of the amount of restitution is a question of fact for the trial court, whose findings will not be disturbed on appeal if supported by substantial evidence. *Smith*, 144 Idaho at 692, 169 P.3d at 280 (quoting *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997)).

Because we have held above that the State did not present substantial evidence of the value of the stolen copper wire at Johnson's trial, we hold that the district court erred in awarding

10

restitution of $2,000 based solely on that same evidence. On remand, the district court should conduct new proceedings to determine appropriate restitution.

### III.

### CONCLUSION

Because there was insufficient evidence to prove that the value of wire stolen by Johnson exceeded $1,000, the judgment of conviction for grand theft must be reduced to petit theft, and because the court erred in its award of restitution, a restitution hearing must be conducted on remand. Johnson has shown no other reversible error in the trial proceedings. Accordingly, the judgment of conviction and restitution order are vacated. On remand the district court is directed to enter an amended judgment of conviction for petit theft, resentence Johnson, and conduct new proceedings on the request for restitution.

Judge GRATTON and Judge MELANSON **CONCUR.**