**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38274**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2012 Opinion No. 4** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: January 23, 2012** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| ABRAHAM VARGAS, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for grand theft, <u>affirmed</u>.

Brian M. Tanner, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent. Elizabeth A. Koeckeritz argued.

LANSING, Judge

Abraham Vargas appeals from his conviction for grand theft following a jury trial. Vargas asserts that the district court erred by refusing his requested jury instruction concerning the definition of "value." He also asserts that his conviction must be reduced to petit theft because the State failed to introduce sufficient evidence either that he possessed all of the stolen property at issue or that the value of the property exceeded one thousand dollars. We affirm.

**I.**

**BACKGROUND**

In March 2010, a Cassia County farm operator hired an irrigation pump company to do some work on one of its wells. The crew pulled nineteen ten-foot pieces of pipe[1] from the well

---

[1] The well assembly consisted of a "shaft" that rotates at high speed and rides inside an "oil tube" that in turn rides inside a "well column." For ease of discussion, we refer to the oil tube

and left the material on the ground on a Friday with the intent to re-install it the following week. When the crew arrived the following Monday, however, the pipe was gone.

When alerted to the loss, the farm manager went directly to a local recycling scrapyard and asked the owner whether he had seen the pipe. The owner immediately directed the farm manager to the pipe, which the scrapyard had purchased for $332.52. The scrapyard relinquished the pipe back to the farm and it was reinstalled in the well. The scrapyard owner also gave police the license plate number and a copy of the driver's license of the individual who brought the pipe to the yard. These showed the individual to be Vargas.

Vargas was interviewed by the police and subsequently charged with grand theft by possession of stolen property with a value in excess of one thousand dollars. Idaho Code §§ 18-2403(4), 18-2407(1)(b)(1). Vargas was found guilty at a jury trial, and he appeals the consequent conviction.

## II.

## ANALYSIS

### A. The District Court Did Not Err by Refusing Vargas's Requested Jury Instruction on Value

To establish Vargas's guilt of felony grand theft, the State was required to prove, among other elements, that the theft involved property with a "value" in excess of one thousand dollars. I.C. § 18-2407(1)(b)(1). A specific definition of value applicable to theft cases is given in Idaho Code § 18-2402(11)(a):

> [V]alue means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.

Vargas requested that the following instruction be given to the jury concerning value:

> The term "value" as used in these instructions means as follows:
>
> The market value of the property at the time and place of the crime, or if the market value cannot be satisfactorily ascertained, value can be shown by any number of measures including salvage value, replacement cost, purchase price, and the property's general use and purpose.

---

and shaft together as "pipe." Two pieces of well column were also taken, but discussion of that material is not needed for disposition of the issues in this appeal.

The district court refused the requested instruction, holding that it was inconsistent with the statutory definition of "value." The district court instead instructed the jury with the statutory definition, but said that Vargas was free to argue in closing that the jury should use the salvage price paid by the scrapyard in its determination of the market value of the pipe. Vargas posits error in the refusal of his requested instruction.

There was no error. When a statute provides the definition of a term as used in the same or a related statute, it is correct, of course, to instruct the jury with that definition.

Vargas's proposed instruction was derived from this Court's comments in *State v. Johnson*, 149 Idaho 259, 233 P.3d 190 (Ct. App. 2010), a grand theft case. Although we there applied the Idaho Code § 18-2402(11)(a) definition of value to the facts of the case, our opinion also included the following remarks:

> Although salvage value may be admissible and relevant to determine the value of stolen items, it is not ipso facto the market value of property that has been sold for scrap. *As we stated in State v. Hughes, 130 Idaho 698, 703, 946 P.2d 1338, 1343 (Ct. App. 1997), if market value cannot be established, value can be shown by any number of measures other than just salvage value including purchase price, replacement cost, and the property's general use and purpose. The choice of which measure is appropriate depends upon the circumstances of the individual case.* Salvage value generally will not be the appropriate measure if it was the defendant's actions that caused the item to be useless for anything other than scrap. *State v. Cope*, 7 Ariz. App. 295, 438 P.2d 442, 444-45 (1968); *McClure v. State*, 295 Ga. App. 465, 673 S.E.2d 856, 858 (2009); *State v. Albert*, 117 Or. 179, 242 P. 1116, 1118 (1926).

*Johnson*, 149 Idaho at 263, 233 P.3d at 194 (emphasis added). The case from which the italicized language above was drawn, *State v. Hughes*, 130 Idaho 698, 703, 946 P.2d 1338, 1343 (Ct. App. 1997), addressed a felony malicious destruction of property charge. The inquiry in *Hughes* was how to measure the value of the damage caused by the defendant's destruction of the victim's property. Unlike the grand theft statutes, the statute defining the crime of malicious destruction of property includes no definition of "value." *See* I.C. § 18-7001; *Hughes*, 130 Idaho at 702-03, 946 P.2d 1342-43. Thus, in *Hughes*, this Court was called upon to define how value may be proven when no statutory definition has been provided. Our incorporation of this portion of our *Hughes* analysis into the *Johnson* opinion was ill advised because, for the grand theft charge at issue in *Johnson*, the method of measuring value is that specified in Idaho Code § 18-2402(11)(a). That statute directs that, for theft cases, if the market value cannot be satisfactorily

ascertained, value is to be determined by "the cost of replacement of the property within a reasonable time after the crime." Therefore, utilization of alternative measures identified in *Hughes* for malicious destruction of property cases would be inappropriate in theft cases. The district court did not err in rejecting Vargas's proposed instruction which presented methods of measuring value that are inconsistent with the governing statute.

**B.** **The State Provided Sufficient Evidence that the Value of the Pipe Exceeded One Thousand Dollars**

Vargas next contends there was insufficient evidence to prove that the value of the stolen pipe exceeded one thousand dollars, and therefore his conviction must be reduced to petit theft.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Byington*, 132 Idaho 589, 593, 977 P.2d 203, 207 (1999); *Johnson*, 149 Idaho at 263, 233 P.3d at 194. We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Rather, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Here, the State relied upon evidence of market value to prove that the stolen pipe was worth more than $1,000. Vargas argues that the State failed in this effort. He contends that the evidence showed that there existed no market for used pipe of this type because such pipe was not generally available. This argument fails on the face of the record. The State's witness on valuation was the owner of the irrigation pump company that removed the stolen pipe from the farm well and later reinstalled the same pipe. He testified that as a part of his business, he bought and sold new and used equipment for irrigation systems, including pipe. The man said that he would be willing to buy the pipe at issue for 40 percent of the cost of new pipe, and that he could resell it for 60 percent of the cost of new pipe. He said that his customers often ask for

4

used pipe because it would be less expensive, but that he generally does not have such pipe available for sale because people who possess used pipe keep it in use. He noted: "I had a customer yesterday ask for used stuff, but I don't have it to sell is the problem. If I have the stuff, I could sell it more often. It's just not available." According to Vargas, this testimony about the low availability of used pipe establishes that there exists no market for the product. We disagree. That the market demand for a product exceeds its supply does not demonstrate that there exists no market value. Here, the owner of a company engaged in the business of selling new and used pipe clearly testified that when used pipe is available he can generally sell it for 60 percent of the price of equivalent new pipe. He testified about the price he would pay for the used pipe at issue (slightly over $200 per ten-foot section) and what he would charge for the pipe on re-sale (slightly over $300 per ten-foot section). Because there were nineteen sections of pipe stolen, under either measure there was sufficient evidence that the market value of the pipe exceeded $1,000.

Vargas's next contention--that the State did not establish that this value applied to pipe of the same type and condition as the stolen pipe--is also incorrect. During direct examination, the prosecutor elicited the following testimony:

> **Q.** . . . Based on your work experience and your history of running this business, are you familiar with the value *of this type of tube and shaft*?
> **A.** It's expensive. I think that stuff is somewhere around 530 some odd dollars a joint, I think, when it's brand-new.
> **Q.** So more than $500 per 10-foot section--
> **A.** That's correct.
> **Q.** -- of tube and shaft together?
> **A.** That's correct.
> **Q.** And what about when it's used?
> **A.** We usually get 60 percent of the new value for used price.
> **Q.** And so if the new value was $500, used would be around 300?
> **A.** Yeah.
> **Q.** *Now, talking specifically about the material from this case*, let's say Mr. Young had recovered it, but after--he had already recovered it but after he had already installed new material so it was then excess and he needed to sell it. Around that time, end of March 2010, would this material have gone for that used price that you just gave us?
> **A.** Yeah.
> **Q.** So about $300 per 10-foot section?
> **A.** That's correct.

5

Clearly, the witness was talking about the value of the precise pipe that was stolen in this case, not other pipe that might have been of a different quality or condition. The evidence of market value is sufficient to support the jury's verdict.

**C.     The State Presented Sufficient Evidence that Vargas Was in Possession of the Pipe**

The stolen pipe was taken to the scrapyard in two pickup loads, one on Saturday March 20, 2010, and one on Monday, March 22, 2010. The second delivery occurred about twenty minutes before the farm manager arrived looking for the pipe. Vargas contends that the State failed to provide sufficient evidence that he personally delivered, and thus possessed, the pipe on both occasions.

Again, the record refutes Vargas's claim. The owner of the scrapyard testified that although both Vargas and another man came in with loads of scrap metal at various times on the two days in question, Vargas was the one who delivered the pipe at issue. The owner said that he personally unloaded the pipe from the pickup that Vargas was driving. A detective who interviewed Vargas before his arrest testified that Vargas admitted driving his pickup loaded with scrap metal to the yard twice on Saturday and twice on Monday. Thus, the State presented substantial and competent evidence that Vargas personally possessed both pickup loads of the pipe.

### III.
### CONCLUSION

The jury was properly instructed, and substantial evidence supports the verdict. Therefore, the judgment of conviction is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**